The STATE of Ohio, Appellee,

v.

JACKSON, Appellant.

[Cite as *State v. Jackson* (2001), 145 Ohio App.3d 223.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 78695.

Decided Aug. 13, 2001.

*William D. Mason,* Cuyahoga County Prosecuting Attorney, and *Reno J. Oradini, Jr.,* Assistant Prosecuting Attorney, for appellee.

*Robey & Robey, Gregory Scott Robey* and *Margaret E. Amer,* for appellant.

---

MICHAEL J. CORRIGAN, Presiding Judge.

A jury found defendant Jephthah Jackson guilty of one count of felonious assault, a violation of R.C. 2903.11. His primary complaints on appeal are that the court erred by failing to make a sufficient inquiry to determine whether he understood and intentionally waived his right to counsel.

The state's evidence showed that defendant, his brother, and the victim were watching television and drinking beer at the brother's house. Defendant and the victim began exchanging insults back and forth until the victim told defendant to "suck my dick." Defendant rose from his chair and asked the victim to hand him the beer he had been holding. When the victim did so, defendant took the beer, turned away and put the beer down, then turned back to the victim and hit him in the eye. The blow struck with such force that the victim claimed to hear the eye "pop." Defendant then struck a second time, breaking the victim's nose. He ordered the victim to leave the house.

The victim went home and slept the following the day, but persistent bleeding from his nose brought him to the hospital. He originally told the medical personnel that he sustained his injuries after being attacked by three unknown assailants. Doctors examined and then operated on the victim's eye, but were unable to save it. The victim explained that he did not immediately identify defendant as the assailant because he wanted to protect him.

Defendant presented his brother's testimony that no fight occurred in the house. The brother testified that defendant and the victim began arguing after defendant accused the victim of stealing a sock from defendant. Before the fight escalated, however, defendant told the victim to leave. Other evidence presented

by defendant tended to cast doubt on the victim's timing of events, and further called into question his sobriety on the night of the attack.

Defendant discharged his originally appointed counsel and the court appointed the public defender. When the public defender informed the court that defendant wished to represent himself in the matter, the court confirmed that fact with defendant, and ordered the public defender to sit at the trial table and assist with trial. Defendant now complains that the court erred by failing to make a sufficient inquiry to determine whether he understood and intentionally waived his right to counsel. He claims that the court knew he could not adequately represent himself at trial, yet made him go forward because it had lost patience with him.

Although the Sixth Amendment to the United States Constitution guarantees an accused the right to counsel, there is no constitutional provision guaranteeing the right of self-representation. Nevertheless, in *Faretta v. California* (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562, the United States Supreme Court held that the Sixth Amendment incorporates the right to self-representation. The court stated that the right to "assistance" of counsel can only be justified "by the defendant's consent, at the outset, to accept counsel as his representative." *Faretta*, 422 U.S. at 820–821, 95 S.Ct. at 2534, 45 L.Ed.2d at 573. *Faretta* went on to state:

"When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits." 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 581.

Section 10, Article I of the Ohio Constitution contains a more explicit provision permitting self-representation, stating that "the party accused shall be allowed to appear and defend in person and with counsel * * *." Although the Ohio Constitution is a document of independent legal force, *Humphrey v. Lane* (2000), 89 Ohio St.3d 62, 68, 728 N.E.2d 1039, 1044–1045, the Ohio Supreme Court has nonetheless construed Section 10, Article I of the Ohio Constitution as being coexistent with the rights afforded under the Sixth Amendment to the United States Constitution. In *State v. Gibson* (1976), 45 Ohio St.2d 366, 74 O.O.2d 525, 345 N.E.2d 399, the syllabus states:

"1. The Sixth Amendment, as made applicable to the states by the Fourteenth Amendment, guarantees that a defendant in a state criminal trial has an independent constitutional right of self-representation and that he may proceed to defend himself without counsel when he voluntarily, and knowingly and

intelligently elects to do so. *Faretta v. California* (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562.

"2. In order to establish an effective waiver of the right to counsel, the trial court must make sufficient inquiry to determine whether the defendant fully understands and intelligently relinquishes that right."

■ So when an accused informs the court that he chooses to exercise the right of self-representation, the court must satisfy itself of two things: (1) that the accused is voluntarily electing to proceed pro se and (2) that the accused is knowingly, intelligently, and voluntarily waiving the right to counsel. This is best done in line with *Von Moltke v. Gillies* (1948), 332 U.S. 708, 723, 68 S.Ct. 316, 323, 92 L.Ed. 309:

■ " 'This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused.' To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." (Footnotes omitted.)

■ Finally, the court must keep in mind that a violation of the right of self-representation is *per se* error, not subject to harmless error analysis. See *McKaskle v. Wiggins* (1984), 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122, fn. 8; *State v. Reed* (1996), 74 Ohio St.3d 534, 535, 660 N.E.2d 456, 457–458. This places the court in the precarious position of having to protect the right of self-representation while at the same time ensuring that the accused fully under-stands the implications of waiving counsel.

■ Nothing in the record can reasonably be considered sufficient to show first that defendant made a knowing and intelligent choice to represent himself at trial, and, second, that he knowingly and voluntarily waived his right to counsel.

The public defender representing defendant told the court that the communica-tion between the two had broken down and that defendant was "adamant he wanted to represent himself." The following exchange occurred:

"THE COURT: Tell me what you want here.

"THE DEFENDANT: Well, just like I stated in the writing in the letter, I would like to have a chance to waive my rights to counsel.

"THE COURT: You want to what?

"THE DEFENDANT: I would like to waive my right to counsel.

"THE COURT: Waive your right to what?

"THE DEFENDANT: Waive my right to counsel.

"THE COURT: Waive your right to assigned counsel, is what you are saying. You want to represent yourself?

"THE DEFENDANT: Right. And my reasons are stated in the letter. And I would like to have the letter back if it's possible. The reason why I'm asking for it is because I'm having—I'm getting a strange feeling that somebody is tampering with my file, and that's why I use that method.

"THE COURT: Okay. Mr. Jackson, I'll grant your request. You can represent yourself. However, I'm not releaving [sic] Mr. Stefan [the assistant public defender] from the case. Mr. Stefan will be sitting with you to assist you at trial [sic] table—your eventual trial."

The court then defined for the assistant public defender his duties during trial. Defendant requested access to the law library, saying, "I don't see how I have a chance of fighting my case when I'm delayed requested literature." The transcript continues:

"THE COURT: Mr. Jackson, this Court feels you have a better chance defending your case with an attorney, but it's your choice to relieve yourself of an attorney.

"THE DEFENDANT: I can't trust these guys, your Honor.

"THE COURT: You have been provided with two very competent counsel and you have chosen not to use them.

"THE DEFENDANT: He threatened my family in court. You even heard it.

"THE COURT: Who threatened your family, Mr. Jackson?

"THE DEFENDANT: Excuse me, [originally appointed-counsel]. He sat right there. And she's recording it, and this guy I can't trust because he is depriving me of my certain motions that I filed. I haven't heard from the Clerk of Courts. I just found out recently that I'm supposed to let the lawyer take care of all that work, but I sent this person—

"THE COURT: Okay, we're adjourned here. Mr. Jackson, I have a feeling you will not be happy with the way anything goes in your case. Good luck.

"THE DEFENDANT: Excuse me. Am I supposed to sign this waiver?

"THE COURT: Remand him.

"THE DEFENDANT: Wait a minute. Am I supposed to sign this?

"MR. STEFAN: It's on the record.

"THE BAILIFF: It's on the record. That is why we went on the record.

"THE DEFENDANT: Can I see—because I read something different—

"THE BAILIFF: That is it. You are representing yourself now."

At no point during this exchange did the court inform defendant of his right to counsel, the nature of the charges against him, the statutory offenses involved, the possible defenses to the charge, and any other facts essential to a broad understanding of the matter. Nothing in the record suggests that defendant knew the consequences of acting on his own behalf, and the transcript shows that the court terminated the hearing while defendant still had questions, leaving those questions unanswered.

For proof that defendant knowingly waived his right to counsel, the state points to a letter defendant sent the court in which he allegedly asked that the public defender be removed. We read the letter differently. Defendant told the court that he asked for a copy of the court's journal for dates and all prior proceedings. Counsel apparently provided a computer-generated copy of the docket, and defendant objected because it did not contain copies of the original entries. Defendant told the court that "this was done intentionally to deprive me off [sic] information about my own person." He went on to say that "in order to procure/ensure an [sic] fair and expeditious trial I am subject to notify the 'American Bar Association' for further assitence [sic] during my final proceedings."

Nothing in this letter rises to the level of an outright waiver of the right to counsel. The closest the letter comes to a waiver is defendant's statement that he would ask the American Bar Association for further assistance. We are not prepared to say that a request for further assistance can be interpreted as an explicit waiver of the right to counsel. And in any event, even if this letter could be interpreted as easily as the state suggests, it would not relieve the court of its duty to make the mandatory waiver inquiries on the record.

■ The prejudice from the court's failure to ensure that defendant made a knowing and voluntary decision to represent himself is manifest on the record. Defendant had no idea how to present his case, and even more fundamentally, did not appear to understand his right to subpoena witnesses to testify in his defense.

When the court convened for trial nearly three months after it found defendant chose to proceed in his own behalf, defendant was completely unaware that he was present for purposes of trial. He first told the court that he had not seen

any response to his discovery demand. In response to the court's question about whom defendant intended to call as witnesses, defendant said he had no idea that he was present for purposes of trial. As the court continued to discuss the witness issue, defendant said, "what part of—what stage are we anyway during this trial. What is this?" The court replied, "This is a trial date, Mr. Jackson. We are four minutes away from bringing the jury in to pick the jury to decide your case. This is not a surprise, this has been scheduled since at least August." Defendant replied, "No one told, Your Honor. I was not aware."

The parties then discussed the issue of discovery. The court asked the state whether there were any written statements. The assistant prosecuting attorney replied, "Not that the state has possession of." This appears to be untrue, as the state presented into evidence the victim's statement. The state failed to divulge this material even though there were two separate requests for discovery filed by the defense: one filed by defendant's first attorney, the other filed by defendant himself. The state introduced this document into evidence that same day.

After the court empaneled the jury, defendant requested a continuance so that he could subpoena witnesses. He explained that he was unaware that trial was scheduled for that day. Exasperated, the court replied, "Mr. Jackson, when you fire two competent attorneys, what did you expect? Where did you go to law school? Who was going to do this for you?" We think it obvious that defendant had no idea what self-representation would involve, and the court's failure to advise him that he would be responsible for compelling the attendance of his own witnesses directly contributed to his inability to mount an efficient and competent defense. The first assignment of error is sustained. This moots consideration of the remaining assignments.

*Judgment reversed*
*and cause remanded.*

PATRICIA A. BLACKMON and PATTON, JJ., concur.

JOHN T. PATTON, J., retired, of the Eighth Appellate District, sitting by assignment.