JOURNAL ENTRY and OPINION
{¶ 1} Michael C. Tierney, represented pro se at trial, appeals his conviction for theft, safecracking, and breaking and entering. Tierney brings forth five assignments of error for our review. For the reasons set forth below, we affirm in part, reverse in part and remand for resentencing.
{¶ 2} On July 15, 2000, Erin Stary, the store manager for The Nature Company at Great Northern Mall, observed some movement in the store's back room. When Stary opened the door to the back room, she bumped into Tierney who was kneeling towards the store's safe. Tierney said that he was looking for the bathroom, adjusted his pants and walked past Stary back to the store.
{¶ 3} Stary followed him out of the store and instructed her assistant Deborah Doering to call security. Stary told Doering that the man was wearing a blue baseball cap, a white t-shirt, knee-length blue shorts with a white stripe and tennis shoes.[1] Stary returned to the back room and discovered that the safe had been opened and the deposit bag taken. Stary testified that it is store policy and her habit to keep the safe locked unless someone is putting money in or taking money out.
{¶ 4} Doering testified that it was she, following store procedures, who prepared the previous night's cash register log[2] and who put the deposit bag in the safe. Further, Doering testified that she observed the deposit bag in the safe that morning but left it in the safe because she was the only one there (another employee had called in sick) and store policy requires two employees to take the money to the bank. Finally, Doering testified that she locked the safe that morning.
{¶ 5} Security eventually found Tierney coming out of a service hallway, a loading dock area that is restricted from the public. Security called Stary, who then identified Tierney as the man she saw in the back room of The Nature Company. The deposit bag was never found.
{¶ 6} Before trial, Tierney filed a motion to waive assistance of counsel. At a pretrial hearing, the court stated:
 {¶ 7} [T]here is another document that was handed to me by counsel for the defendant * * * and it indicates — it purports to be a waiver of counsel and pro se representation wherein the defendant waives his right to counsel and requests that he represent himself in this matter. The defendant obviously has a right to have counsel represent him.
 {¶ 8} Also, in the State of Ohio you have a right to proceed with your own defense. That isn't normally advisable. It's very helpful, obviously, to have an attorney assist you, especially as it appears that you are from out of state with regard to Ohio procedure and practices.
 {¶ 9} So what is it your desire (sic), Mr. Tierney? Do you wish to proceed pro se?
{¶ 10} Tierney stated, Yes, I do, your Honor. I don't know if you read my motions I gave you in the mail. The court granted Tierney's motion to represent himself pro se and discharged the public defender who was present at this hearing.
{¶ 11} The above hearing was held September 26, 2000. Two months earlier, on July, 26, 2000, Tierney filed with the court a motion for speedy trial by jury; a motion for discovery; and a notice of appeal on excessive bail; all filed pro se. Further, in another document filed on July 26, 2000, Tierney wrote, * * * I demand my speedy trial by jury, and Motion for Discovery, and a new bail hearing, (sic) please do not deny me access to the courts. I, Michael C. Tierney waive counsel, and I will represent myself, in court. On August 1, 2000, Tierney, pro se, filed a motion to challenge the array of grand jurors. On September 3, 2000, he filed, again pro se, a writ of habeas corpus. On September 20, 2000, he pled not guilty, was declared indigent and was assigned a public defender as counsel. Then, as stated above, on September 26, 2000, Tierney successfully moved the court to allow him to represent himself, whereupon the public defender was discharged by the court.
{¶ 12} At the close of the prosecution's case, Tierney offered no defense and later made no objections to the jury charge. After the jury had been sent to deliberate, Tierney made sure that he would not be excluded when the judge, prosecutor and jury were present. The court assured him that there would be no ex parte communication and Tierney stated, Okay. Thank you for letting me represent myself.
{¶ 13} Tierney was convicted of safecracking, a felony of the fourth degree; theft, a felony of the fifth degree; and breaking and entering, a felony of the fifth degree. At sentencing, the court reviewed his substantial prior convictions and the facts of this matter and found that it could demean the seriousness of this offense to place [Tierney] on a term of probation. Further, the court noticed that he had violated the terms of his parole. The trial court sentenced Tierney to the maximum of eighteen months for safecracking; and twelve months for theft, to run concurrently with the safecracking, because the Court finds that there is not a separate animus for that offense, and it merges with the safecracking. Further, the court sentenced Tierney to twelve months for breaking and entering to be served consecutively to the other two sentences for a total of thirty months.
{¶ 14} ASSIGNMENT OF ERROR NO. I:
 {¶ 15} THE TRIAL COURT ERRED WHEN IT ALLOWED AN INCARCERATED DEFENDANT TO REPRESENT HIMSELF, AND DISCHARGED PUBLIC DEFENDER, WITHOUT FINDING THE DEFENDANT VOLUNTARILY (SIC) KNOWINGLY (SIC) AND INTELLIGENTLY WAIVED HIS RIGHT TO COUNSEL.
{¶ 16} This court recently stated the applicable law:
 {¶ 17} Although the Sixth Amendment to the United States Constitution guarantees an accused the right to counsel, there is no constitutional provision guaranteeing the right of self-representation. Nevertheless, in Faretta v. California (1975), 422 U.S. 806, 45 L.Ed.2d 562, 95 S. Ct. 2525, the United States Supreme Court held that the Sixth Amendment incorporates the right to self-representation. The court stated that the right to assistance of counsel can only be justified by the defendant's consent, at the outset, to accept counsel as his representative. Faretta, 422 U.S. at 821. Faretta went on to say:
 {¶ 18} When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must knowingly and intelligently forgo those relinquished benefits. 422 U.S. at 835.
 {¶ 19} Article I, Section 10 of the Ohio Constitution contains a more explicit provision permitting self-representation, stating that the party accused shall be allowed to appear and defend in person and with counsel * * *. Although the Ohio Constitution is a document of independent legal force, (citation omitted) the Ohio Supreme Court has nonetheless construed Article I, Section 10 of the Ohio Constitution as being coexistent with the rights afforded under the Sixth Amendment to the United States Constitution. In State v. Gibson (1976), 45 Ohio St.2d 366, 345 N.E.2d 399, the syllabus states:
 {¶ 20} 1. The Sixth Amendment, as made applicable to the states by the Fourteenth Amendment, guarantees that a defendant in a state criminal trial has an independent constitutional right of self-representation and that he may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so. Faretta v. California (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562.
 {¶ 21} 2. In order to establish an effective waiver of the right to counsel, the trial court must make sufficient inquiry to determine whether the defendant fully understands and intelligently relinquishes that right.
 {¶ 22} So when an accused informs the court that he chooses to exercise the right of self-representation, the court must satisfy itself of two things: (1) that the accused is voluntarily electing to proceed pro se and (2) that the accused is knowingly, intelligently, and voluntarily waiving the right to counsel. This is best done in line with Von Moltke v. Gillies (1948), 332 U.S. 708, 723, 92 L.Ed. 309, 68 S.Ct. 316:
 {¶ 23} * * * This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.
 {¶ 24} Finally, the court must keep in mind that a violation of the right of self-representation is per se error, not subject to harmless error analysis. See McKaskle v. Wiggins (1984), 465 U.S. 168, fn. 8, 79 L.Ed.2d 122, 104 S.Ct. 944; State v. Reed (1996), 74 Ohio St.3d 534, 535, 660 N.E.2d 456. This places the court in the precarious position of having to protect the right of self-representation while at the same time ensuring that the accused fully understands the implications of waiving counsel.
{¶ 25} State v. Jackson (8th Dist. 2001), 145 Ohio App.3d 223,226-227.
{¶ 26} In Jackson, this court reversed the judgment of the trial court due to the trial court's error in allowing the defendant to represent himself because [n]othing in the record can be considered sufficient to show that defendant made a knowing and intelligent choice to represent himself at trial, and second, that he knowingly and voluntarily waived his right to counsel. Id. at 227. Further, [n]othing in the record suggests that defendant knew the consequences of acting on his own behalf, and the transcript shows the court terminated the hearing while defendant still had questions, leaving those questions unanswered. Id. at 229.
{¶ 27} In the matter before us now, the record shows that appellant made a knowing and intelligent choice to represent himself and that he knowingly and voluntarily waived his right to counsel. The Supreme Court requires that, To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. Von Moltke332 U.S. at 723-724. Here, the trial court had before it numerous pro se filings, which show an appreciation and understanding of the legal processes, and repeated requests in writing for waiver of counsel. The court advised appellant, with counsel present at the time, that it was not advisable to waive representation especially considering that appellant was from out of state and was probably not familiar with Ohio procedures and practices. The circumstances here simply did not demand a more thorough examination. The numerous, properly-formatted, relatively sophisticated and well written pro se motions filed by appellant, counsel's presence at the hearing and Tierney's waiver at that hearing, show that Tierney did not make this waiver involuntarily or unintelligently. This court has said that determining whether a defendant should be permitted to waive counsel is best done in accordance with Von Moltke. Jackson at 227. We have not held that it is the only way and we decline to do so, especially when, as here, the circumstances do not so require. In this regard, we find persuasive the analysis of the dissent in State v. Richards (Sept. 20, 2001), Cuyahoga App. No. 78457 (O'Donnell, J., dissenting) (It is my view that, based on the particular facts and circumstances of this case, including the background, experience, and conduct of the accused, the court properly permitted [the accused] to proceed pro se.).
{¶ 28} It is clear from the record that appellant here made a knowing and intelligent choice to represent himself and that he knowingly and voluntarily waived his right to counsel.
{¶ 29} Assignment of Error No. I is not well taken.
{¶ 30} ASSIGNMENT OF ERROR NO. II:
 {¶ 31} THE TRIAL COURT ERRED WHEN IT FAILED TO HOLD A HEARING ON A (SIC) INCARCERATED PRO-SE DEFENDANT'S MOTION TO SUPPRESS EYE WITNESS IDENTIFICATION.
{¶ 32} According to both parties' briefs, appellant filed a motion to suppress eye-witness identification testimony with the court on September 18, 2000, though there is no record of this filing on the docket. The court, however, at the September 26, 2000 hearing referenced above, stated that a hearing on appellant's suppression motion would be heard on October 10th.
{¶ 33} On October 10th, the court asked, Are there any matters that must be addressed before the Court proceeds * * *? Tierney responded that he had a motion in limine that I'd like to submit[.] He continued, Also, your Honor, the prosecution's (sic) failed to disclose full discovery. He was referring to witness statements, which the court explained he was not entitled to. Finally, the court asked again, Is there anything further that we need to address?
{¶ 34} We note again that there is no record on the docket that any such motion was filed. Appellant attached a motion to suppress to his brief that he submitted to this court. The docket shows other filings Tierney made pro se. We therefore need not consider this motion at all. The record on appeal consists of [t]he original papers and exhibits thereto filed in the trial court * * * and a certified copy of the docket and journal entries[.] App.R. 9(A) (emphasis added). Because appellant's motion was never properly filed with the trial court, it does not constitute part of the record for this appeal.
{¶ 35} Even if we consider the motion filed for purposes of this appeal, we would still find that appellant's argument is not well taken since he essentially waived his right to argue his motion. The court asked more than once if there was any other business before the start of trial. Appellant did not raise the suppression issue.
{¶ 36} This assignment is not well taken.
{¶ 37} ASSIGNMENT OF ERROR NO. III:
 {¶ 38} THE EVIDENCE IS CONSTITUTIONALLY INSUFFICIENT TO SUPPORT A CONVICTION FOR THEFT, SAFECRACKING, AND BREAKING AND ENTERING.
 A.
{¶ 39} Appellant argues that there was insufficient evidence to convict him of the crimes charged. Specifically, appellant argues that, since no money was ever found, anything could have happened to that money and his being in the same room as the safe from which money was taken is not enough to convict him.
{¶ 40} Appellant properly cites to the controlling standard of review here: The relevant inquiry [for appellate review] is whether after viewing the evidence in the light most favorable to the prosecutor, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259.
 B. 1.
{¶ 41} The statutes read in relevant part, the following:
{¶ 42} Theft R.C. 2913.02:
 {¶ 43} (A) No person, with purpose to deprive the owner of property * * *, shall knowingly obtain or exert control over * * * the property * * * in any of the following ways:
 {¶ 44} (1) Without the consent of the owner or person authorized to give consent[.]
{¶ 45} Safecracking (R.C. 2911.31):
 {¶ 46} (A) No person, with purpose to commit an offense, shall knowingly enter, force an entrance into, or tamper with any vault, safe, or strongbox.
{¶ 47} Breaking and Entering (R.C. 2911.13):
 {¶ 48} (A) No person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense * * *.
 {¶ 49} (B) No person shall trespass on the land or premises of another, with purpose to commit a felony.
 2.
{¶ 50} Appellant argues that because no money was recovered from him that the state therefore failed to provide sufficient evidence. This lack of direct evidence, however, does not automatically require a finding of not guilty.
{¶ 51} Evidence may be direct or circumstantial. Moreover, [c]ircumstantial evidence and direct evidence inherently possess the same probative value. Jenks at 272. Further, [s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact finding function is concerned, all that is required of the jury is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt. Id. Finally, the reasonable juror may draw inferences from that evidence.
{¶ 52} Here, drawing the reasonable inferences from the facts that appellant was found in the private, back room of The Nature Company; that there were no signs indicating that a public bathroom could be found there; that the private bathroom door could not be seen from where Tierney was discovered; that Stary discovered him kneeling down in front of the safe; that money had been placed in the safe the night before; that the money had been checked and the safe had been locked that morning; that appellant quickly stood up upon being discovered, adjusted his pants, and hurried out of the store; and that upon immediate investigation, the money was found to be missing; this court holds that there was sufficient evidence to find appellant guilty of all three charges.
{¶ 53} Specifically, this court holds that there was sufficient evidence to find that appellant knowingly exerted control over the property of The Nature Company without its consent; that appellant knowingly forced entry into the safe with the intent to take the money; and that appellant trespassed with the intent to commit a theft offense.
{¶ 54} Appellant's claim that he was looking for the bathroom does not relieve him of trespassing. As recounted above, the back room was off limits to the public. Although appellant was a business invitee at the time he entered the store, the invitation extends to the store area and no further. Once Tierney exceeded the scope of the invitation and entered the store's back room, he ceased to be a business invitee and became a trespasser. See Gladon v. Greater Cleveland Regional Transit Auth. (1996), 75 Ohio St.3d 312.
{¶ 55} This assignment is not well taken.
{¶ 56} ASSIGNMENT OF ERROR NO. IV:
 {¶ 57} THE TRIAL COURT ERRED IN CONVICTING MICHAEL C. TIERNEY OF ALL THREE COUNTS OF HIS INDICTMENT WHERE THREE COUNTS CAN BE CONSIDERED ALLIED OFFENSES OF SIMILAR IMPORT.
{¶ 58} Appellant argues that the crimes of theft, safecracking, and breaking and entering should be considered allied offenses of similar import and that therefore his conviction was improper.
{¶ 59} The allied offenses statute reads in relevant part:
 {¶ 60} Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain information for all such offenses, but the defendant may be convicted of only one.
{¶ 61} R.C. 2941.25(A).
{¶ 62} The applicable test for deciding that issue is as follows: If the elements of the crimes "`correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import.'" (Citations omitted.) If the elements do not so correspond, the offenses are of dissimilar import and the court's inquiry ends — the multiple convictions are permitted. State v. Rance (1999), 85 Ohio St.3d 632, 636. Further, comparison of the statutory elements is to be done in the abstract. Id.
{¶ 63} Here, comparing the elements of the three offenses in the abstract, we hold that they are not allied offenses of similar import.[3]
Theft requires for conviction the purpose to deprive the owner of property, something not required in the safecracking or breaking and entering statutes. See, e.g., State v. Green (Apr. 19, 2001), Union App. No. 14-2000-26, unreported. Safecracking requires the showing of knowingly entering or forcing an entry into a safe, something not required in the theft or breaking and entering statutes. Finally, the breaking and entering statute requires the showing of trespass, something not required in the theft or safecracking statutes.
{¶ 64} Because the elements of these three offenses do not correspond, our inquiry is at an end, and we hold the offenses are of dissimilar import. The trial court's finding that there was not a separate animus for the offenses of theft and safecracking was unnecessary. Because the elements of the offenses do not correspond, the issue of separate animus need never have been reached.
{¶ 65} This assignment is not well taken.
{¶ 66} ASSIGNMENT OF ERROR NO. V:
 {¶ 67} THE TRIAL COURT ERRED BY VIOLATING THE PROVISIONS OF R.C. 2929.11, 2929.12, 2929.13 AND 2929.14(C) IN SENTENCING DEFENDANT TO MAXIMUM AND CONSECUTIVE SENTENCES FOR CONVICTIONS OF FELONIES OF THE FOURTH AND FIFTH DEGREE.
{¶ 68} Appellant argues that the trial court erred by sentencing Tierney to (1) maximum and (2) consecutive terms without making the requisite findings. Preliminarily, we note that we will consider those sentencing statutes in effect at the time of the sentencing hearing.
 1.
{¶ 69} Appellant is correct that R.C. 2953.08 allows an appeal when the sentence consisted of * * * the maximum term allowed for the offense by division (A) of section 2929.14 * * * and was not imposed pursuant to division (D)(3)(b) of section 2929.14 * * * and when the sentence was imposed for two or more offenses arising out of a single incident, and the court imposed the maximum prison term for the offense of the highest degree.[4] Here, the court did indeed sentence Tierney to the maximum sentence for the offense of the highest degree (safecracking).
 2.
{¶ 70} R.C. 2929.14(C) states in relevant part that the court may impose the longest prison term * * * only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders * * *, and upon certain repeat violent offenders * * *.
 3.
{¶ 71} R.C. 2929.14(E)(4)[5] states:
 {¶ 72} If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 73} (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18
of the Revised Code, or was under post-release control for a prior offense.
 {¶ 74} (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 75} (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
 4.
{¶ 76} Further, R.C. 2929.19(B)(2)(c) requires the trial court to provide reasons when it imposes consecutive sentences under R.C. 2929.14; and R.C. 2929.19(B)(2)(e) requires the trial court to provide reasons when it imposes maximum sentences pursuant to R.C. 2929.14(A).
{¶ 77} Here, the court stated:
 {¶ 78} I've had an opportunity to review your criminal history as well as the facts of this case, and I find that it could demean the seriousness of this offense to place you on a term of probation. This offense was committed after you had been while you were serving a term of parole. You violated the terms of your parole. According to your criminal history, you've been incarcerated in the past for various offenses, and I find you to be incorrigible.
{¶ 79} * * *
 {¶ 80} Therefore, you are going to be sentenced to a year consecutive.
{¶ 81} While the trial court here did not make the requisite findings on the record as to its imposition of maximum and consecutive sentences, R.C. 2929.14 alone does not necessarily require these findings on the record. In any event, the trial court failed to include the reasons for the imposition of consecutive and maximum sentences, counter to the requirements of R.C. 2929.19(B)(2)(c) and (e). This court has previously held that [f]ailure to sufficiently state these reasons on the record constitutes reversible error. State v. Gary (2001),141 Ohio App.3d 194, 196; see, also, State v. Adkins (Nov. 15, 2001), Cuyahoga App. No. 78933. Further, it is not enough that the record before the trial court adequately supports the imposition of consecutive sentences. State v. Hall (June 29, 2000), Cuyahoga App. No. 76467. Finally, R.C. 2953.08(G)(1) states that when a sentencing court fails to make the findings required by R.C. 2929.14(E)(4), a reviewing court must remand the cause to the sentencing court with instructions to state on the record the required findings.
{¶ 82} This assignment is well taken. We therefore remand to the trial court the matter of sentencing only. The court is instructed to state on the record the required findings.
Affirmed in part, reversed in part and remanded for resentencing.
This cause is affirmed in part, reversed in part and remanded for resentencing.
Costs assessed against defendant-appellant.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for resentencing.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, J., CONCURS. ANNE L. KILBANE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE CONCURRING AND DISSENTING OPINION.
[1] Stary identified Tierney in court as the man she discovered in The Nature Company's back room. Stary described Tierney's in-court attire as consisting of a white t-shirt, knee-length blue shorts and tennis shoes.
[2] Doering testified that the deposit bag contained $687.85 in cash and $278.57 in checks.
[3] The relevant elements are provided in the sufficiency of evidence discussion above.
[4] Appellant incorrectly cites to R.C. 2953.08(B) when he meant R.C.2953.08(A)(1)(b).
[5] Again, appellant has cited to the incorrect statute. The language quoted in appellant's brief comes from R.C. 2929.14(E)(4), not R.C.2929.14(E)(3). We analyze appellant's arguments under R.C.2929.14(E)(4).