JOURNAL ENTRY AND OPINION
{¶ 1} This is an appeal from a jury verdict of guilty on one count of kidnapping, following trial before Judge Jose A. Villanueva. Kyle Martin claims that the judge failed to adequately secure an intelligent and voluntary waiver of his right to counsel, the guilty verdict was against the manifest weight of the evidence and prosecutorial misconduct necessitates remand for a new trial. We find there was insufficient inquiry to ensure that Martin voluntarily and intelligently waived his right to counsel in undertaking his own defense, and that he was not required to sign a written waiver of counsel, as Crim.R. 44(C) mandates. We reverse and remand for a new trial.
 {¶ 2} From the record we glean the following: Martin was indicted on charges of tampering with evidence, attempted aggravated murder, kidnapping, tampering with records and conspiracy to commit murder. The State contended he was a knowing co-conspirator and active participant in a scheme concocted by his cousin, Tonica Jenkins, and his aunt, Tonica Clement, to fake his cousin's death so she could escape federal prosecution. The plan was to find a woman similar in appearance and age to Ms. Jenkins and, under the name "Tonica Jenkins," have her attend doctor's appointments to create a medical file. The State alleged that, once sufficient medical records existed, the three intended to kill the victim and burn her body so that the woman's medical records would be used to identify her remains as those of Ms. Jenkins. The objective, the State argued, was to feign Ms. Jenkins' death in order to evade a federal criminal indictment related to drug possession and/or trafficking.
 {¶ 3} At trial, Martin argued that, while his cousin asked him to locate a female participant for a scheme, when he and Ms. Jenkins enlisted the services of Melissa Latham, the victim, he understood that she would be using Ms. Latham to perpetrate some type of insurance fraud. He claimed to be unaware of any plot to kill the victim until Ms. Jenkins attempted to kill her with an overdose of insulin.
 {¶ 4} Ms. Latham testified that both Martin and Ms. Jenkins asked her, as part of an insurance scam, to attend some doctor's appointments using Ms. Jenkins' name in exchange for money and drugs. She stayed at Jenkins' home for a few days and used drugs with Martin during this time period. Martin then drove Ms. Latham and his cousin to a dentist in Strongsville, where Ms. Latham had her teeth cleaned and dental x-rays were taken, and where Ms. Jenkins filled out all the paperwork.
 {¶ 5} In the Jenkins' basement the following day, Ms. Latham claimed, Martin attacked her and either he or Ms. Jenkins hit her in the head several times with a brick. Then, she said, while Martin held her down, Ms. Jenkins repeatedly injected her with insulin. After she "played dead," she claimed they left and she was able to escape and find help.
 {¶ 6} The State dismissed the tampering with evidence and tampering with records counts against Martin prior to trial and, during trial, dismissed the conspiracy to commit murder count. The kidnapping and attempted aggravated murder counts, with a lesser included charge of attempted murder, were submitted to the jury, which returned not guilty verdicts on all but the kidnapping count, for which it found Martin guilty. He was sentenced to the maximum, ten year prison term for kidnapping,[1] and now appeals in three assignments of error.
 {¶ 7} Martin contends he was inadequately advised of his right to counsel and he did not knowingly or intelligently waive that right. Furthermore, it is undisputed that, in violation of Crim.R. 44(C), he was never required to execute a written waiver of counsel.
 {¶ 8} In State v. Gibson,[2] the Ohio Supreme Court recognized that a defendant in a criminal trial has a constitutional right of self-representation, and may defend himself when he knowingly, voluntarily, and intelligently elects to do so. However, "courts are to indulge in every reasonable presumption against the waiver of a fundamental constitutional right[,] including the right to be represented by counsel."[3] As a result, a valid waiver affirmatively must appear in the record, and the State bears the burden of overcoming the presumption against a valid waiver.[4]
 {¶ 9} In order to establish an effective waiver of the right to counsel, a judge must make a sufficient inquiry to determine whether a defendant fully understands and intelligently relinquishes that right.[5]
Therefore, "when an accused informs the court that he chooses to exercise his right of self-representation, the court must satisfy itself of two things: (1) that the accused is voluntarily electing to proceed pro se and (2) that the accused is knowingly, intelligently, and voluntarily waiving the right to counsel."[6] To discharge its duty "properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand."[7]
 {¶ 10} "`To be valid such a waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and other circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.'"[8]
 {¶ 11} Before concluding there has been a waiver, the judge must be satisfied that the defendant made an intelligent and voluntary waiver with the knowledge that he will have to represent himself and that there are dangers in self-representation.[9] Lack of compliance with these standards in ensuring that a defendant is voluntarily, intelligently, and knowingly relinquishing his right to counsel is reversible error and not subject to harmless-error review.[10]
 {¶ 12} In addition to conducting an on-the-record colloquy with a defendant regarding his decision to waive his right to counsel, Crim.R. 44(C) obligates a judge to ensure, in "serious offense cases," that a defendant's waiver of counsel is in writing.[11] Although there is competing appellate authority to suggest that the failure to secure a written waiver of the right to counsel is subject to a "substantial compliance" standard, and that, so long as the criteria announced in VonMoltke v. Gillies, supra, are substantially met, a conviction need not be overturned in the absence of a showing of prejudice,[12] other courts have held that Crim.R. 44(C) is enforced "to the letter," and strict compliance is necessary, with a failure of compliance mandating reversal.[13]
 {¶ 13} In this case, David Grant, assigned to represent Martin, withdrew after citing scheduling conflicts and disagreements with his client about strategy and motions to be filed in pursuit of the defense of the charges. Subsequently, John Stanard and Darin Thompson, from the Cuyahoga County's Public Defender's office, were assigned to represent Martin. As disagreements arose between Martin and his new lawyers about appropriate, possibly meritorious pre-trial motions, the judge asked Martin if it was his intention to act as his own lawyer, and he stated that it was not, but that he intended to file motions on his behalf as they suited his perceived interests. He affirmatively stated that he wanted the assistance and support of his attorneys.
 {¶ 14} On the record, Stanard stated that he and Martin disagreed on how the defense of the charges was to be handled and that it was his perception that Martin wanted to "run the show." The judge resolved the situation by directing that Martin would be representing himself and that he would have access to his attorneys for any assistance he might require. In making this decision, the judge stated that he found Martin to be a competent and articulate individual, although he did expressly caution him against "abandoning" his lawyers. Martin was further advised that he would be treated like any attorney-advocate in the courtroom and held to the same standards of conduct and rules.
 {¶ 15} On the Friday before trial, the judge told Martin that he would allow him to examine witnesses after his attorneys had done so, if he wished to allow them to represent him, and asked him to reconsider acting as his own lawyer. He warned him that, as a defendant, he would be accompanied by a deputy any time he wished to approach the bench at sidebar, and "obviously that is something that will be evident to the jury." He cautioned Martin that if he questioned a witness about a particular subject, that the prosecution would also be able to delve into that line of inquiry, and that lawyers often know better than laymen what to ask or not ask witnesses.
 {¶ 16} On the day of trial, Martin moved to have new lawyers appointed because Stanard and Thompson were unwilling to press matters he thought should be explored, such as various objections he had to the form or substance of his indictments. He stated that he did not have proper access to legal research materials and that he did not understand the law. The judge gave him the choice of either representing himself with the assistance of his lawyers as standby counsel or letting his lawyers represent him, with the understanding that he could contribute to his defense whenever he so chose. As it happened, Martin allowed his lawyers to conduct jury voir dire, argue a Crim.R. 29 motion on his behalf, and lead him through his direct testimony when he took the witness stand on his own behalf. Martin, however, made his own opening and closing statements, questioned all other witnesses on his own, and successfully pointed out to the judge that the conspiracy to commit murder count was facially defective, prompting the State to dismiss it.
 {¶ 17} From the overall record of the case, we find that Martin was inadequately advised about the perils of self-representation, and there was no discussion had at all regarding what charges Martin faced, what penalties he was facing if convicted or what potential defenses he may have at his disposal, as State v. Gibson, supra, and Von Moltke v.Gillies, supra, expressly require. In addition, we hold that the absence of a written waiver, especially considering that Martin never really made an affirmative choice to represent himself, but rather chose what he thought to be the lesser of two evils in representing himself, must compel reversal, in line with the holdings of State v. Mathers and Statev. Ware, supra, which mandate compliance with Crim.R. 44 "to the letter."
 {¶ 18} Considering our disposition of Martin's first assignment of error, his assignments relating to the manifest weight of the evidence and possible prosecutorial misconduct are rendered moot by virtue of the fact that the assigned errors, even if meritorious, would result in remand for retrial as well.[14]
Conviction reversed and case remanded.
It is ordered that appellant recover from appellee costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., J. concurs in judgment only.
TIMOTHY E. McMONAGLE, J., concurs.
[1] Under R.C. 2905.01, kidnapping is a felony of the first degree, punishable by a prison term from three to ten years. See R.C.2929.14(A)(1).
[2] (1976), 45 Ohio St.2d 366, 377-378.
[3] State v. Dyer (1996), 117 Ohio App.3d 92, 95.
[4] Id.
[5] State v. Gibson, 45 Ohio St.2d 366, at paragraph two of the syllabus.
[6] State v. Jackson (2001), 145 Ohio App.3d 223, 227.
[7] Gibson, 45 Ohio St.2d at 377.
[8] Id., quoting Von Moltke v. Gillies (1948), 332 U.S. 708, 723, see also State v. Jackson, 145 Ohio App.3d at 227.
[9] State v. Ebersole (1995), 107 Ohio App.3d 288, 293.
[10] See State v. Richards (Sept. 20, 2001), Cuyahoga App. No. 78457,State v. Jackson, supra, State v. Melton (May 4, 2000), Cuyahoga App. No. 75792, unreported.
[11] State v. Mathers (Aug. 9, 2002), Clark App. No. 200-CA-92, 2002-Ohio-4117. A "serious offense" is defined in Crim.R. 2(C) as any felony and any misdemeanor for which the penalty prescribed by law includes confinement for more than six months.
[12] State v. Longworth (Oct. 16, 2001), Allen App. Nos. 1-01-08, 1-01-51, citing State v. Fair (Sept. 17, 1996), Franklin App. Nos. 96-APA01-64, 96-APA01-64, State v. Overholt (1991), 77 Ohio App.3d 111,115.
[13] State v. Mathers, supra, citing State v. Ware (Dec. 30, 1999), Montgomery App. No. 17610.
[14] See App.R. 12(A)(1)(c).