[Cite as *Parma v. Battaia*, 2012-Ohio-173.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 96569

---

## CITY OF PARMA

PLAINTIFF-APPELLEE

vs.

## GENO BATTAIA

DEFENDANT-APPELLANT

---

### JUDGMENT:
### REVERSED AND REMANDED

---

Criminal Appeal from the
Parma Municipal Court
Case No. 10 CRB 03693

**BEFORE:** Celebrezze, P.J., S. Gallagher, J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:** January 19, 2012

**ATTORNEY FOR APPELLANT**

Justin M. Smith
The J. M. Smith Co., L.P.A.
24400 Highpoint Road
Suite 7
Beachwood, Ohio   44122


**ATTORNEYS FOR APPELLEE**

Timothy G. Dobeck
Law Director/Chief Prosecutor
City of Parma
BY:   Karl R. Wetzel
Senior Assistant Prosecutor
6611 Ridge Road
Parma, Ohio   44129
FRANK D. CELEBREZZE, JR., P.J.:

{¶ 1} Appellant, Geno Battaia, appeals from three misdemeanor convictions for criminal damaging and disorderly conduct.  Battaia argues that his right to counsel was violated when the trial court did not properly advise him of the dangers of proceeding without an attorney when he dismissed his court appointed counsel just before trial, and that the trial court should have continued the trial when Battaia dismissed his attorney. After a thorough review of the record and relevant law, we reverse.

### I.   Factual and Procedural History

{¶ 2} On August 15, 2010, appellant was aboard a "party bus" with a group of friends that ended up parked outside the Blue Moose Saloon in Parma, Ohio.  Bus passengers disembarked and continued their festivities

inside the Blue Moose. At some point during the evening, emergency dispatchers received 9-1-1 calls about a possible assault outside the bar. Sergeant Nicholas Hunter testified at trial that he first encountered Battaia outside the bar fighting with his friends. Battaia claimed that a bouncer at the door had assaulted him and that he was injured. Officer James Mack interviewed Battaia about the assault and testified that he refused medical treatment. Officer Mack also noted that Battaia appeared extremely intoxicated; he advised Battaia to reboard the bus and stay there. Sgt. Hunter eventually issued a citation to Battaia for disorderly conduct at approximately 1:00 a.m. for "struggl[ing] with friends and refus[ing] to leave." Battaia then indicated he would reboard the bus and stay there until his friends rejoined him to take him home, and the officers left.

{¶ 3} Approximately a half hour later, the police were again dispatched to the Blue Moose when Battaia called 9-1-1 asking for paramedics. When Sgt. Hunter arrived, he saw Battaia, who appeared extremely intoxicated, struggling with paramedics and using foul language. After talking to Officer Mack, Battaia again refused medical treatment, and Officer Mack issued him a second disorderly conduct citation. Officer Mack testified that Battaia was transported to a detox cell because he was such a problem.

{¶ 4} Corrections Supervisor Karen Tyrpak reported for work at 7:00 a.m. at the Parma jail, where Battaia had spent the night. She testified that

at approximately 10:30 a.m., the door monitor system of Battaia's cell began malfunctioning. The system indicated that the door was open, but when checked, it was closed and locked. The door had functioned properly at 8:30 a.m. when Tyrpak had given Battaia breakfast, but later when she examined the door, she found that it was sparking, smoking, and smelling of urine. Battaia was moved to a different cell, and Tyrpak noticed urine around and on the door. A maintenance person also found urine inside the door's locking mechanism.

{¶ 5} Battaia was arraigned on September 1, 2010, on two counts of disorderly conduct in violation of Parma Municipal Code 648.04, fourth degree misdemeanors, and one count of criminal damaging in violation of Parma Municipal Code 642.10, a second degree misdemeanor. He was appointed counsel after executing an affidavit of indigency, and pretrials were conducted. A day or two before trial, Battaia filed a grievance against his attorney and indicated that the attorney had not done what he was supposed to do to properly defend Battaia. On the day of trial, Battaia indicated that he, not his attorney, had requested the 9-1-1 tapes and video from the booking area of the Parma jail through public records requests. The court asked Battaia if he wished the attorney to continue to represent him, and Battaia said he did not. The court then instructed Battaia to sign a

waiver of counsel with no discussion of the implications, and the court proceeded to a bench trial.

{¶ 6} After the opening statement by the city of Parma, Battaia requested a continuance to prepare because he had not expected to defend himself without an attorney. The trial court refused and trial continued. At its conclusion, the trial court found Battaia guilty of two counts of disorderly conduct and one count of criminal damaging. The court immediately imposed two consecutive 30-day jail sentences in addition to a suspended jail term of 90 days. The court also imposed a $1,000 fine, costs, and two years of community control. Battaia moved for a stay of execution, but the court denied it, and Battaia was immediately taken into custody.

{¶ 7} Battaia then appealed assigning three errors.

## II. Law and Analysis

### A. Right to Counsel

{¶ 8} Battaia first argues that "[t]he trial court erred by failing to advise [him] of the consequences of proceeding to trial pro se and failed to comply with Criminal Rule 44(B) and (C)."

{¶ 9} Crim.R. 44(B) and (C) provide:

Where a defendant charged with a petty offense is unable to obtain counsel, the court may assign counsel to represent him. When a defendant charged with a petty offense is unable to obtain counsel, no sentence of confinement may be imposed upon him, unless after being fully advised by the court, he knowingly,

intelligently, and voluntarily waives assignment of counsel[; and this] waiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22 * * *.

{¶ 10} This court has previously set forth the appropriate standard for reviewing the present claim in *State v. Richards*, 8th Dist. No. 78457, 2001 WL 1134880, *1-2 (Sept. 20, 2001):

> It is axiomatic that a criminal defendant has a right to counsel pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution. Moreover, the Sixth Amendment "* * * guarantees that a defendant * * * has an independent constitutional right to self-representation." *State v. Gibson* (1976), 45 Ohio St.2d 366, [345 N.E.2d 399,] paragraph one of the syllabus, citing *Faretta v. California* (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562.
>
> To effect a valid waiver of the right to counsel, it is necessary that the trial court "make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right." Id. at paragraph two of the syllabus. "Before concluding there has been a waiver, the court must be satisfied that the defendant made an intelligent and voluntary waiver with the knowledge that he will have to represent himself and that there are dangers in self-representation." *State v. Ebersole* (1995), 107 Ohio App.3d 288, 293[, 668 N.E.2d 934].

{¶ 11} And in *State v. Hughley,* 8th Dist. Nos. 92588 and 93070, 2009-Ohio-5824, 2009 WL 3648469, *7, we held:

> Although there is no prescribed colloquy in which the trial court and a pro se defendant must engage before a defendant may waive his right to counsel, the court must ensure that the defendant is voluntarily electing to proceed pro se and that the defendant is knowingly, intelligently, and voluntarily waiving the right to counsel. *Hughley,* citing *State v. Martin*, 8th Dist. No. 80198, 2003-Ohio-1499, 2003 WL 1561530, citing *State v.*

*Jackson*, 145 Ohio App.3d 223, 227, 762 N.E.2d 438 (8th Dist. 2001).

{¶ 12} When determining the sufficiency of the trial court's advisement, we have recently reaffirmed the use of the test set forth in *Von Moltke v. Gillies*, 332 U.S. 708, 723, 68 S.Ct. 316, 92 L.Ed. 309 (1948). *State v. Birinyi*, 8th Dist. Nos. 95680 and 95681, 2011-Ohio-6257, 2011 WL 6151478, *3.

> To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. *Von Moltke,* 332 U.S. at 724.
>
> Here, the trial court's colloquy with Battaia is as follows:
>
> [Battaia's attorney]: Your Honor, if I may advise the court of some information I just learned today, my client apparently has filed a complaint [against me].
>
> * * *
>
> [The Court]: You filed a complaint against your attorney?
>
> [Battaia]: Yes, sir. Yes.
>
> [The Court]: But you still want him to represent you?
>
> [Battaia]: That's why I was hoping I would get here early enough, that I would have time before the case for this to happen. But what I'm trying to say is I asked my attorney to perform a request for discovery, since my first meeting with him, on October 14th, 2010, for him to locate the recordings of the 9-1-1 phone calls, as well as booking room tapes of my arrest, for it can show my demeanor or whatever. But at the same time, the 9-1-1 calls are public record, and I was able to get those, but they weren't given through requests for discovery — which they should be, by law. And I have those laws with me, if the Court will be patient.

And I did attempt to get the booking room tapes, but those are being held by public records, that only through discovery will those be given to us for viewing purposes. So therefore, I have not been allowed to get copies of those, for my own, to get. So therefore, since those are being held, they should be part of the — sorry sir, I just need water — those are being held, as for discovery.

And I have not had time to think about it, and I have just come across this in the past couple weeks. And I have been asking and asking my attorney and I trusted in him to do these things for me. And, your Honor, I'm not sure if I should allow my public defender, Jim, to work on my behalf, for I believe there are some instances where he didn't work on my behalf. And that's some of what I had to say, but I have all the facts to back it up.

* * *

[The Court]: You need to make a decision, if you want [your attorney] to represent you or not.

[Battaia]: May I ask, if [my attorney] doesn't represent me, how am I supposed to — I don't understand.

[The Court]: Your trial is today. It's here and now. You were granted a court appointed attorney. You made the decision, you're an adult. You made the decision to file a complaint against your attorney, and to record conversations and alienate your attorney — if he's in fact alienated. I don't know, I would be if I was your attorney — you made the decision.

Now, being over 18 you're going to make a decision. The person that you, it seems, intentionally tried to alienate, do you want him to represent you? Or do you want to dismiss him, and represent yourself at this time?

* * *

[Battaia]: I would not like [my attorney] to represent me any longer.

[The Court]: My bailiff, Cindy, is going to give you a waiver of counsel. Like I said, you were granted an attorney, appointed counsel, you had an opportunity, and now you have released your counsel.

{¶ 13} Battaia then signed and dated a waiver of counsel, and the trial court stated, "All right. You now represent yourself. This is a knowing, voluntary waiver of counsel. We're ready to proceed."

{¶ 14} The record is devoid of any meaningful colloquy discussing the rights given up by waiving counsel. A talismanic statement by the court that the waiver is valid does not make it so. There is no discussion of the consequences of waiving counsel, the charges against him, or possible defenses. It was not Battaia's intention, prior to the day of trial, to waive that right. The trial court gave Battaia the ultimatum of going to trial with an attorney he had no faith in and had undermined his relationship with[1] or representing himself. There is nothing in the record that his decision to forego representation was knowing or voluntary. *Gibson*, 45 Ohio St.2d 366, at paragraph two of the syllabus ("In order to establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right."). *See also Richards*, 2001 WL 1134880.

_____

[1] In addition to filing a grievance, Battaia had apparently secretly tape recorded every meeting he had with his attorney.

**{¶ 15}** Therefore, Battaia's first assignment of error is sustained. This holding renders Battaia's other two assigned errors moot, and they will not be addressed.[2]

### III.   Conclusion

**{¶ 16}** The trial court erred when it accepted Battaia's waiver of counsel without any meaningful colloquy discussing that decision and ensuring that the wavier was made knowingly, intelligently, and voluntarily. Therefore, Battaia's convictions must be reversed and a new trial ordered.

**{¶ 17}** This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant recover of said appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Parma Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

[2] These errors state: "The trial court's denial of Appellant's request to continue the trial and the Trial Court forcing Appellant to proceed to trial pro se denied Appellant his right to effective assistance of counsel guaranteed by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution[; and] Appellant was denied due process and his constitutionally guaranteed right to effective assistance of counsel."

FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
EILEEN A. GALLAGHER, J., CONCUR