[Cite as *State v. Moore*, 2012-Ohio-1958.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 95106**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JOHN MOORE, JR.

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART, REVERSED
IN PART, AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-392440

**BEFORE:** Celebrezze, J., Stewart, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:** May 3, 2012

**ATTORNEY FOR APPELLANT**

Jonathan N. Garver
4403 St. Clair Avenue
The Brownhoist Building
Cleveland, Ohio  44103-1125


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY:    Kristin Karkutt
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., J.:

{¶1} Appellant, John Moore, Jr., appeals from his convictions and the sentence imposed after his retrial on charges of aggravated robbery and kidnapping with firearm specifications. After a careful review of the record and relevant case law, we affirm in part and reverse and remand in part.[1]

{¶2} This court originally reviewed the circumstances that led to appellant's convictions in *State v. Moore*, 8th Dist. No. 78751, 2002-Ohio-1831 ("*Moore I*"). The state presented evidence at jury trial alleging that appellant and his accomplice, Lamar Chaney, gained entrance to the Hard Rock Cafe in Cleveland on May 21, 2000. Once inside, the men entered the inner office and ordered manager Tammi Minoski to open the restaurant's safe. Minoski testified that one of the men, later identified as Chaney, held a "shiny gun" to her head as she emptied the safe. While Minoski was putting the money into appellant's duffel bag, Chaney took Hard Rock Cafe employee Lexi Halitsky into the office and tied her up with duct tape. When Minoski finished with the safe, appellant tied her up with duct tape and placed her in the office with Halitsky. Once Minoski and

---

[1] Judge Celebrezze is writing for the majority on assignments of error 1 through 14 inclusive. Judge Rocco is writing for the majority on assignment of error 15.

Halitsky were secured in the office, the two men left the restaurant with approximately $14,000.

{¶3} On June 8, 2000, appellant was indicted on the following charges: Count 1, aggravated robbery with firearm specifications; Counts 2 and 3, kidnapping with firearm specifications; and Count 4, having a weapon while under disability. On September 11, 2000, the jury trial commenced. At the conclusion of the trial, the jury returned verdicts of guilty on Counts 1, 2, and 3, and the firearm specifications attached thereto. Appellant was sentenced to ten years on each of the base counts and three years on the firearm specifications. Appellant was ordered to serve an aggregate prison term of 33 years.

{¶4} In *Moore I*, appellant raised eight assignments of error, including denial of his constitutional rights to effective assistance of counsel, self-representation, due process, and a fair trial, as well as denial of his right to confrontation. This court affirmed appellant's convictions, but found that the trial court violated appellant's right to due process when it failed to make a finding that the consecutive sentences imposed were not disproportionate to the offenses. Thus, appellant's sentence was reversed, and his case was remanded for resentencing.

{¶5} In January 2003, the Ohio Supreme Court denied appellant's request for leave to appeal, thus, appellant's case returned to the trial court for resentencing. The record reflects the trial court conducted the resentencing in 2005 via video

"teleconference" over appellant's objection to that procedure. After appellant received the same sentence as originally imposed, he appealed the trial court's order of sentence.

{¶6} In *State v. Moore*, 8th Dist. No. 86244, 2006-Ohio-816 ("*Moore II*"), this court reversed appellant's sentence once again, holding that he had a constitutional and statutory right to be physically present in court. On remand from that decision, the trial court again sentenced appellant to a total term of 33 years on May 23, 2006.

{¶7} While *Moore II* was pending before this court, appellant petitioned the federal district court for a writ of habeas corpus, alleging that four constitutional violations occurred during his original trial. In *Moore v. Haviland*, 476 F.Supp.2d 768 (N.D.Ohio 2007) ("*Moore III*"), the district court agreed with appellant's first claim. The district court decided that, although appellant had asserted his right to self-representation at his trial in a timely manner, the trial court unconstitutionally denied him the right by failing to address appellant's assertion. In essence, *Moore III* held that the trial court's lack of attention to the matter could not be excused. The district court further held that *Moore I* had misapplied United States Supreme Court precedent in finding that appellant had waived the issue. The district court concluded its decision by ordering as follows: "[P]etitioner shall be released from custody unless the State of Ohio commences a new trial against him within 120 days after this judgment becomes final."

{¶8} The warden, however, appealed the judgment of the federal district court. *Moore III* was subsequently affirmed by the United States Sixth Circuit Court of Appeals

in *Moore v. Haviland*, 531 F.3d 393 (6th Cir.2008) (rehearing and rehearing en banc denied).

{¶9} The warden then filed a petition for writ of certiorari. In light of this action, the federal district court issued a stay of its decision in *Moore III,* pending a determination on the warden's petition. *Moore v. Haviland*, 607 F.Supp.2d 867 (N.D.Ohio 2009).

{¶10} On October 5, 2009, the United States Supreme Court denied the petition for a writ of certiorari. *Welch v. Moore*, __U.S. __, 130 S.Ct. 92, 175 L.Ed.2d 234 (2009). Subsequently, the district court lifted the stay on its decision in *Moore III*. By this time, *Moore III*'s original order had been pending for nearly three years.

{¶11} On October 21, 2009, the Cuyahoga County Court of Common Pleas issued a journal entry stating, in pertinent part:

> This court has learned this date that this case has been reversed by the Sixth Circuit of the United States Court of Appeals and * * * has to be tried within 25 days * * *.

> Defendant is ordered returned * * * for a pre-trial conference on 11-02-09 [at] 9:00 a.m. and trial is scheduled for [Monday,] 11-9-09 [at] 9:00 a.m.

{¶12} On November 5, 2009, appellant appeared in court and stated that he would not waive his right to counsel or his right to a speedy trial. During the hearing, the Public Defender's Office cited a conflict and declined to represent appellant in this matter. The case was referred for reassignment. Between November 6 and November 9, 2009, appellant met with approximately eight separate attorneys. None of the attorneys were

able to represent him due to time constraints. Based on appellant's failure to obtain legal counsel, the Ohio Attorney General filed a motion for extension of time with the federal district court.

{¶13} On November 10, 2009, attorney Rufus Sims was appointed to represent appellant. On that date, the federal district court granted the Ohio Attorney General's motion for extension of time and continued appellant's trial date for 30 days.

{¶14} On November 19, 2009, attorney Sims filed a motion for enlargement of time for trial with the federal district court. On November 25, 2009, the trial court set a trial date for December 8, 2009, pending the federal district court's decision on attorney Sims's motion.

{¶15} The case was called to trial on December 8, 2009. On that date, it was learned that the federal district court granted attorney Sims's motion for extension of time, and appellant's trial was rescheduled to January 18, 2010. Appellant objected to the extension of time, and the following day appellant fired attorney Sims after a heated altercation occurred on the record.

{¶16} On December 14, 2009, the trial court appointed the State Public Defender's Office to represent appellant. Trial commenced on April 1, 2010. After the jury was selected, appellant elected to exercise his constitutional right to self-representation. At

the conclusion of the trial, appellant was found guilty on all counts,[2] including the one- and three-year firearm specifications. The court sentenced appellant to ten years on each count, to run concurrently to each other, and three years for the gun specifications, for an aggregate sentence of 33 years.

{¶17} In this timely appeal, appellant raises 15 assignments of error for review.

Law and Analysis

I. Right to Counsel

{¶18} In his first assignment of error, appellant argues that his due process rights and the right to counsel were denied because the trial court failed to make adequate inquiry into appellant's dissatisfaction with court-appointed counsel.

{¶19} In *State v. Deal*, 17 Ohio St.2d 17, 244 N.E.2d 742 (1969), the Ohio Supreme Court held that when an accused raises a specific complaint regarding his dissatisfaction with counsel during the course of the trial, the trial court has an obligation to ensure that the record contains an adequate investigation of the complaint before continuing with the trial. *Id*. at 19-20. "The right to counsel is important enough that in a situation such as this a reviewing court should have sufficient information in the record to determine whether a claim of inadequate counsel is justified." Once a defendant makes the requisite showing, the trial court's failure to appoint new counsel "amounts to a

---

[2] Appellant was not retried on the original indictment's Count 4, having a weapon while under disability.

denial of effective assistance of counsel." *State v. Pruitt*, 18 Ohio App.3d 50, 57, 480

N.E.2d 499 (8th Dist.1984).

{¶20} "The decision whether or not to remove court appointed counsel and allow

substitution of new counsel is addressed to the sound discretion of the trial court, and its

decision will not be reversed on appeal absent an abuse of discretion." *Id.* "The term

'abuse of discretion' implies that the court's attitude is unreasonable, arbitrary or

unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶21} In the instant case, appellant appeared in court with attorney Sims for the

first time on November 16, 2009. During the hearing, the following statements were

made:

DEFENDANT: May I speak?

COURT: Now you can speak Mr. Moore. Go ahead.

DEFENDANT: I would like to go to the record that I do not want him for my lawyer.

COURT: You don't?

DEFENDANT: No.

COURT: What is the problem? I thought everything was going smooth here.

* * *

DEFENDANT: Because he said to me that his schedule was real tight and that he felt that the only way that he could really give me a good defendant [sic] was to have two associates assigned and an investigator, because they

would have to basically put the case together, and then he could take it to trial and actually represent me at trial, but he needed assistance to do that.

**{¶22}** Additionally, appellant argued that because attorney Sims had other trials pending, he had "too much on his plate to properly represent [appellant] in such a short amount of time."

**{¶23}** Generally, "an indigent defendant's right to counsel does not extend to counsel of the defendant's choice." *Thurston v. Maxwell*, 3 Ohio St.2d 92, 93, 209 N.E.2d 204 (1965). Rather, "[t]o discharge a court-appointed attorney, the defendant must show '"a breakdown in the attorney-client relationship of such magnitude as to jeopardize a defendant's right to effective assistance of counsel."'" *State v. Coleman*, 37 Ohio St.3d 286, 292, 525 N.E.2d 792 (1988), quoting *People v. Robles*, 2 Cal.3d 205, 215, 85 Cal.Rptr. 166, 466 P.2d 710 (1970). The accused is not guaranteed a "meaningful relationship" with his counsel. *Morris v. Slappy*, 461 U.S. 1, 13-14, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). The fact that an accused disagrees with his attorney regarding trial tactics and strategy is insufficient to warrant the substitution of counsel. *State v. Alexander*, 10th Dist. Nos. 05AP-192 and 05AP-245, 2006-Ohio-1298.

**{¶24}** Initially, we note that appellant set forth little grounds to support his request for appointment of new counsel except for his unfounded belief that attorney Sims could not adequately represent him because he had other trials pending. Such a challenge to representation does not constitute a breakdown in the attorney-client relationship that warrants the appointment of new counsel.

**{¶25}** Regardless of the basis for appellant's displeasure, we find that the trial court diligently considered appellant's concerns and complied with its obligation to ensure that the record contains an adequate investigation of the complaint before continuing with the trial. Upon hearing appellant's request for dismissal of counsel, the trial court inquired as to appellant's basis for dismissal and allowed appellant to speak freely in support of his complaint. Once the trial court understood the nature of appellant's arguments, it explained that attorneys commonly represent more than one client at a time and that attorney Sims was a highly qualified, competent, and well respected attorney in the community.

**{¶26}** Thus, the record adequately reflects that the trial court addressed appellant's concerns on the record and explained that appellant's quarrels with attorney Sims failed to establish any rational form of ineffective assistance of counsel. In fact, the trial court's only rational basis to excuse attorney Sims from the case was based on the actions of appellant, who threatened attorney Sims's life on the record. Under the circumstances of this case, we cannot say the trial court abused its discretion.

**{¶27}** Appellant's first assignment of error is overruled.

## II. Ineffective Assistance of Counsel

**{¶28}** In his second assignment of error, appellant argues that he was denied effective assistance of counsel based on attorney Sims's acceptance of the appointment

despite his heavy workload and his decision to file a motion for extension of time with the federal court without appellant's consent.

{¶29} In order to prevail on an ineffective assistance of counsel claim, a defendant must meet the two-pronged test enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), *certiorari denied*, 497 U.S. 1011, 110 S.Ct. 3258, 111 L.Ed.2d 768 (1990).

{¶30} Initially, the defendant must show that counsel's performance was deficient. To meet that requirement, the defendant must show that counsel's error was so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. The defendant may prove counsel's conduct was deficient by identifying acts or omissions that were not the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Strickland* at 690.

{¶31} Next, if the defendant successfully proves that counsel's assistance was ineffective, the second prong of the *Strickland* test requires the defendant to prove prejudice in order to prevail. *Id.* at 692. To meet that prong, the defendant must show that counsel's errors were so serious as to deprive him of a fair trial, a trial whose result is reliable. *Id.* at 687. A defendant meets this standard with a showing "that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

**{¶32}** As discussed, we find that appellant has failed to establish that attorney Sims's workload prevented him from adequately representing appellant's interests. The record reflects that attorney Sims was actively preparing for appellant's case. During the November 16, 2009 pretrial hearing, attorney Sims affirmatively stated on the record that he was there to "save and protect the rights of Mr. Moore" and was working diligently to provide proper representation given the limited time he was given to prepare for trial. The record reflects that attorney Sims had met with appellant on several occasions, was in the process of filing various motions for discovery on appellant's behalf, and was prepared to assign two of his associates and an investigator to assist him in trial preparation.

**{¶33}** Furthermore, we conclude that attorney Sims did not render ineffective assistance by filing a motion for extension of time with the federal court. In *State v. McBreen*, 54 Ohio St.2d 315, 376 N.E.2d 593 (1978), the court stated:

> A defendant's right to be brought to trial within the time limits expressed in R.C. 2945.71 may be waived by his counsel for reasons of trial preparation and the defendant is bound by the waiver even though the waiver is executed without his consent.

**{¶34}** While we recognize that the speedy trial rights outlined in R.C. 2945.71 do not apply to retrials, *State v. Fanning*, 1 Ohio St.3d 19, 21, 437 N.E.2d 583 (1982), we

find that the rationale supporting the *McBreen* statement is applicable herein. In other words, the time limit set forth by federal court order was subject to waiver without appellant's consent where, as here, the waiver was required for the purposes of trial preparation.

{¶35} In this matter, attorney Sims was appointed to represent appellant on November 10, 2009. On November 19, 2009, attorney Sims filed an emergency motion for extension of time with the federal circuit court. During the December 2, 2009 pretrial hearing, attorney Sims explained:

> Your honor, the emergency motion is to ensure that Mr. Moore receives a fair trial, giving me adequate time to prepare for trial so I can adequately protect Mr. Moore's rights to a fair trial guaranteed under the 5th and 6th amendments of the United States Constitution.

{¶36} Thus, the motion was predicated on attorney Sims's desire to provide appellant with a fair trial and was necessary for trial preparation. Under these circumstances, we cannot conclude that appellant's counsel rendered ineffective assistance.

{¶37} Appellant's second assignment of error is overruled.

### III. Untimely Appointment of Counsel

{¶38} In his third assignment of error, appellant argues that he received ineffective assistance of counsel when the trial court appointed counsel just five days before his trial was set.

{¶39} Courts have previously determined that a trial court's decision to appoint counsel on the day of trial constitutes prejudicial error and effectively denies a defendant his constitutional right to assistance of counsel. *State v. Johnson*, 8th Dist. No. 80436, 2002-Ohio-7057. However, the Constitution does not specify the period that must intervene between the required appointment of counsel and trial. *Hunt v. Mitchell*, 261 F.3d 575, 585 (6th Cir.2001). Rather, a defendant only needs time to confer, consult, and prepare a defense with his appointed counsel. *Avery v. Alabama*, 308 U.S. 444, 446, 60 S.Ct. 321, 84 L.Ed. 377 (1940).

{¶40} In this matter, it is clear that attorney Sims met with appellant on several occasions to discuss trial strategies in the days leading to the trial date. The record further reflects that attorney Sims conveyed to the judge that he planned to utilize the assistance of his associates and an investigator in preparing for appellant's trial. Moreover, the federal court's grant of the Ohio Attorney General's motion for extension of time on November 9, 2010, extended appellant's original trial date by 30 days, thereby alleviating any argument that the initial appointment of attorney Sims just five days before his trial date effectively denied appellant his constitutional right to assistance of counsel.

{¶41} Appellant's third assignment of error is overruled.

IV. Waiver of Counsel — Self-Representation

**{¶42}** In his fourth assignment of error, appellant argues that he received ineffective assistance of counsel when the trial court accepted his written waiver of counsel and accepted his request to proceed pro se without first engaging in a colloquy to ensure that his decision was made knowingly, voluntary, and intelligently.

**{¶43}** Although a defendant may eloquently express a desire to represent himself, a trial court must still satisfy certain parameters to ensure that the defendant's waiver of the constitutional right to counsel is made knowingly, intelligently, and voluntarily. *See State v. Thompson*, 8th Dist. No. 85483, 2005-Ohio-6126. In *State v. Buchanan*, 8th Dist. No. 80098, 2003-Ohio-6851, this court reiterated the well-established parameters and the significance of a defendant's decision to waive his constitutional right to counsel and represent himself as follows:

> "The Sixth Amendment, as made applicable to the states by the Fourteenth Amendment, guarantees that a defendant in a state criminal trial has an independent constitutional right of self-representation and that he may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so." *State v. Gibson* (1976), 45 Ohio St.2d 366, 345 N.E.2d 399, paragraph one of the syllabus, citing *Faretta v. California* (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562. However, "courts are to indulge in every reasonable presumption against the waiver of a fundamental constitutional right, including the right to be represented by counsel." *State v. Dyer* (1996), 117 Ohio App.3d 92, 95, 689 N.E.2d 1034. As a result, "a valid waiver affirmatively must appear in the record, and the State bears the burden of overcoming the presumption against a valid waiver." *State v. Martin*, Cuyahoga App. No. 80198, 2003-Ohio-1499. "In order to establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether a defendant fully understands and intelligently relinquishes that right." *Gibson*, supra, paragraph two of the syllabus.

Although there is no prescribed colloquy in which the trial court and a pro se defendant must engage before a defendant may waive his right to counsel, the court must ensure that the defendant is voluntarily electing to proceed pro se and that the defendant is knowingly, intelligently, and voluntarily waiving the right to counsel. *Martin*, supra, citing *State v. Jackson* (2001), 145 Ohio App.3d 223, 227, 762 N.E.2d 438. Given the presumption against waiving a constitutional right, the trial court must ensure the defendant is aware of "the dangers and disadvantages of self-representation" and that he is making the decision with his "eyes open." *Faretta*, supra, at 835.

In determining the sufficiency of the trial court's inquiry in the context of the defendant's waiver of counsel, the *Gibson* court applied the test set forth in *Von Moltke v. Gillies* (1948), 332 U.S. 708, 723, 68 S.Ct. 316, 92 L.Ed. 309, as follows:

"* * * To be valid such waiver must be made with an apprehension of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the matter." *Buchanan* at ¶15-18.

**{¶44}** In this matter, appellant made a request to represent himself on the record and in writing. Thereafter, the trial court engaged in a lengthy discussion with appellant regarding his right to proceed pro se. The trial court advised him of his maximum possible sentence, advised him of the dangers associated with self-representation, and explained certain trial procedures to him. Thereafter, appellant acknowledged that his decision to proceed pro se was being made knowingly, voluntarily, and intelligently. Appellant indicated that he was not coerced or threatened in any way to make the decision to represent himself.

{¶45} Furthermore, as required by Crim.R. 44(C), appellant signed two separate documents acknowledging in writing his waiver of the right to counsel. Within these documents, appellant indicated that his decision to proceed pro se was being made knowingly, intelligently, and voluntarily and that he understood his rights, the nature of the charges brought against him, the maximum possible sentences, and the perils of proceeding pro se.

{¶46} In light of the trial court's statements on the record and the written waivers signed by appellant, it is clear that the trial court took precautions to ensure that appellant understood the nature of his decision to proceed pro se and that his decision to waive his right to counsel was knowingly, intelligently, and voluntarily made.

{¶47} Appellant's fourth assignment of error is overruled.

V. Plea Agreement

{¶48} In his fifth assignment of error, appellant argues that the state denied him due process of law by refusing to offer him the same plea agreement that he was offered prior to his original trial.

{¶49} Appellant's argument relies on *Turner v. Tennessee*, 940 F.2d 1000 (6th Cir.1991). In *Turner*, the defendant was indicted in Tennessee on two counts of aggravated kidnapping and one count of felony murder. Prior to trial, the prosecutor offered defendant a two-year prison term in return for a guilty plea to lesser charges, but defendant rejected the offer on the advice of counsel. Defendant was subsequently

convicted on all counts and sentenced to life imprisonment for the murder conviction and 40 years for each kidnapping conviction. He was subsequently granted a new trial on the grounds of ineffective assistance of counsel in rejecting the two-year plea offer. Although plea negotiations were reopened, the prosecutor refused to offer less than 20 years' imprisonment. Defendant exhausted his state remedies and then filed a habeas petition in federal court.

{¶50} The court concluded that the appropriate remedy for violation of defendant's Sixth Amendment rights would be a new plea hearing during which a rebuttable presumption of prosecutorial vindictiveness would attach to any plea offer in excess of the original two-year offer. The Sixth Circuit affirmed the district court, concluding there was a realistic likelihood of vindictiveness that demanded application of a rebuttable presumption of vindictiveness to any plea offer in excess of the original two-year offer. *Id*.

{¶51} Therefore, where a criminal defendant's convictions are reversed on appeal and the matter is remanded for new trial, the "prosecution may rescind its original plea offer only upon overcoming a presumption of vindictiveness." *See State v. Williams*, 12th Dist. No. CA2004-06-129, 2005-Ohio-3902.

{¶52} Prior to his retrial, the state offered appellant a plea of time served in this case, leaving appellant to serve the five-year consecutive sentence he had received in an unrelated case. However, appellant refused to accept the proposed plea agreement,

arguing that he was entitled to the plea bargain offered to him prior to his original trial in 2000. Appellant alleged that, prior to his original trial, the state offered him a sentence of five years on all of his cases, including those unrelated to the Hard Rock Cafe robbery.

{¶53} While we recognize appellant's position in this matter, the record does not adequately reflect the validity of his statements regarding the state's prior plea offers. An appellant is responsible for providing an appellate court with a record of the facts, testimony, and evidentiary matters necessary to support his assignments of error. *Yates v. Brown*, 185 Ohio App.3d 742, 2010-Ohio-35, 925 N.E.2d 669 (9th Dist.). In this matter, appellant has failed to provide this court with a transcript or document demonstrating the existence and particulars of the state's alleged plea offer in 2000. Therefore, we have no basis to review appellant's argument as it relates to his prior plea agreement.

{¶54} Appellant's fifth assignment of error is overruled.

VI. *Miranda* Rights — Motion to Suppress

{¶55} In his sixth assignment of error, appellant argues that he was denied due process of law where the state failed to prove that he was given his *Miranda* rights and where his confession was induced by threats to prosecute his girlfriend.

{¶56} A motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

> When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by

competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. (Internal citations omitted.) *Id.*

A. *Miranda* Rights

{¶57} Pursuant to *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), statements "stemming from custodial interrogation of the defendant" must be suppressed unless the defendant had been informed of his Fifth and Sixth Amendment rights before being questioned. *Miranda* requires that a suspect

> be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. *Id.* at 479.

> "The State bears the burden of establishing, by a preponderance of the evidence, that the defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights based on the totality of the circumstances surrounding the investigation. *State v. Gumm* (1995), 73 Ohio St.3d 413, 429, 653 N.E.2d 253." *State v. Preztak*, 181 Ohio App.3d 106, 2009-Ohio-621, 907 N.E.2d 1254 (8th Dist.), ¶ 26, quoting *State v. Williams*, 8th Dist. No. 82094, 2003-Ohio-4811, ¶ 12.

{¶58} Initially, appellant contends that his motion to suppress was appropriate based on the state's failure to prove that he was informed of his *Miranda* rights prior to making his oral statement. Appellant's argument lacks merit.

{¶59} In the present case, detectives obtained a written confession from appellant on May 31, 2000, shortly after his arrest. The interrogation of appellant was conducted by Detectives Michael Alexander and Rick Maruniak. At the suppression hearing, Det.

Alexander testified that he verbally read appellant his *Miranda* rights prior to interrogating him and provided appellant with the opportunity to read his rights in writing.[3] According to Det. Alexander, "We advised him. We read him his rights. We had him read the rights on a sheet of paper, and at the conclusion he read them again and signed and acknowledged them."

**{¶60}** Despite appellant's testimony to the contrary, the evidence presented at the suppression hearing demonstrates that appellant was advised of his *Miranda* rights by Det. Alexander and acknowledged his understanding of those rights in writing. Accordingly, we find that the trial court properly determined that the state established, by a preponderance of the evidence, that appellant was advised of his *Miranda* rights.

### B. Voluntary Waiver

**{¶61}** Alternatively, appellant argues that the waiver of his *Miranda* rights was not freely and voluntarily made. He contends that his statements were induced by pressure and threats to prosecute his girlfriend. He further contends that he was under the influence of drugs at the time of his interrogation, rendering his confession involuntary.

---

[3] Prior to making a written statement, appellant was presented with a document that read: "Before making any written statement that may be used against you at the time of your trial, we wish to repeat the instructions issued prior to oral interrogation, that you have the right to counsel, appointed or retained, before interrogation, that you have the right to remain silent, and that anything you say may be used against you. You have the right to have an attorney present." Below that paragraph, appellant signed his name and acknowledged his understanding of his rights and indicated that he was prepared to make a written statement.

{¶62} In order for a defendant's waiver of *Miranda* rights to be valid, the waiver must be knowingly, intelligently, and voluntarily made. *Miranda* at 444. The state bears the burden of demonstrating, by a preponderance of the evidence, that a defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights based on the totality of the circumstances. *State v. Gumm*, 73 Ohio St.3d 413, 429, 1995-Ohio-24, 653 N.E.2d 253. "The totality of the circumstances includes 'the age, mentality and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of threat or inducement.'" *State v. Campbell*, 90 Ohio St.3d 320, 332, 2000-Ohio-183, 738 N.E.2d 1178, quoting *State v. Edwards*, 49 Ohio St.2d 31, 358 N.E.2d 1051 (1976), paragraph two of the syllabus. Absent a showing that the waiver was voluntary, the waiver is invalid and the defendant's statements should be suppressed. *Id*.

{¶63} Under the totality of the circumstances, we cannot say that appellant's statements were coerced. During the suppression hearing, appellant testified that his confession was induced based on the officer's threats to arrest his girlfriend unless he cooperated. Appellant alleged that the detectives stated, "So, you can get her a cell with you or you can cooperate and we'll leave her out of it, but it's your choice." However, on cross-examination of Det. Alexander, appellant's counsel asked, "During the interrogation of John Moore was there pressure, leverage, placed on him to provide information in order to keep his sweetheart [* * *] out of trouble with the law?" Det. Alexander responded, "Not to my knowledge, no."

{¶64} With respect to appellant's contention that he was under the influence of drugs at the time of his interrogation, the following statements were made at the suppression hearing during the direct examination of Det. Alexander:

Q. Are you able to make a determination, by your own observations, of whether one is under the influence of drugs when you're interacting with them?

A. Yes.

Q. And do you recall at the time of this interview with John Moore, did he appear to be under the influence of any drugs or alcohol?

A. He did not.

{¶65} As stated, the trial court is in the best position to weigh the credibility of witnesses when presented conflicting testimony at a suppression hearing. *Burnside* at ¶ 8.

{¶66} In light of Det. Alexander's testimony during the suppression hearing, we find that the trial court had credible testimony to refute appellant's contentions that he was coerced to make an involuntary statement during his interrogation. Accordingly, we find that appellant knowingly, intelligently, and voluntarily waived his *Miranda* rights. The trial court did not err in denying appellant's motion to suppress.

{¶67} Appellant's sixth assignment of error is overruled.

## VII. Hearsay Testimony

{¶68} In his seventh assignment of error, appellant argues that the court committed prejudicial error by allowing the state to bolster its case with extensive

inadmissible hearsay testimony relating to appellant's involvement in the Hard Rock Cafe robbery.

{¶69} Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Testimonial out-of-court statements presented in a criminal trial also "violate the Confrontation Clause unless the witness was unavailable to testify at trial and the defendant had a prior opportunity to cross-examine the witness." *State v. Crager*, 116 Ohio St.3d 369, 2007-Ohio-6840, 879 N.E.2d 745, ¶ 41, citing *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

{¶70} Approximately one week after the Hard Rock Cafe robbery, Cleveland police officers arrested Chaney and Trent Willis as they were fleeing from the commission of an unrelated aggravated robbery. The men were interrogated by officers about their involvement in the Hard Rock Cafe robbery. At trial, the state elicited the following testimony from Det. Alexander about the statements he received from Willis over the course of his investigation:

> Q. After that visit with Trent Willis, did you have the occasion, either yourself or with other detectives to be involved in this case?
>
> A. We were made aware of a second suspect in the Hard Rock.
>
> DEFENSE: Objection.
>
> COURT: Overruled.
>
> DEFENSE: Can I get a sidebar, sir?

COURT: You can in a minute. Get further into questioning, we'll have a sidebar.

Q. What occurred after the interview with Trent Willis?

A. We went — we signed Trent Willis out of city jail, and he pointed out a location where the second suspect in the Hard Rock Cafe resided.

DEFENSE: Objection.

COURT: Overruled.

Q. Once the address was pointed out, what occurred next?

A. We obtained a consent search warrant. We met with a female * * *. She gave us consent of her residence. She acknowledged knowing a male by the name of John Moore, and we obtained two items from that search warrant.

{¶71} Subsequently, the trial court found that the statements made by Det. Alexander relating to what he learned from Willis were inadmissible testimony on hearsay grounds. The record reflects that the trial court immediately struck the testimony and gave a cautionary instruction to the jury to disregard those statements. Generally, a jury will be presumed to follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an overwhelming probability that the jury would be unable to follow the court's instructions and a strong likelihood that the effect would be devastating to the defendant. *Greer v. Miller*, 483 U.S. 756, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987).

{¶72} Assuming, as we must in the absence of evidence to the contrary, that the jurors accepted and followed the court's curative instruction, we conclude that the instruction was sufficient to cure any error created by Det. Alexander's hearsay statements. Moreover, any prejudicial effect from such testimony was far outweighed by the overwhelming evidence of appellant's guilt.

{¶73} Accordingly, appellant's seventh assignment of error is overruled.

## VIII. Prosecutorial Misconduct

{¶74} In his eighth assignment of error, appellant argues that the state committed prosecutorial misconduct based on its discussion of a silver 9 mm semi-automatic handgun during its case-in-chief when the state knew that the gun had been recovered from suspects in an unrelated robbery, when the state knew it could not prove that the gun had been used in the Hard Rock Cafe robbery, and when the state never intended to introduce the exhibit into evidence.

{¶75} The test for prosecutorial misconduct is whether the prosecutor's actions were improper and, if so, whether they prejudicially affected substantial rights of the accused. *State v. Bey*, 85 Ohio St.3d 487, 1999-Ohio-283, 709 N.E.2d 484; *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990), *cert. denied*, 498 U.S. 1017, 111 S.Ct. 591, 112 L.Ed.2d 596 (1990). A prosecutor's conduct during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial. *State v. Apanovitch*, 33

Ohio St.3d 19, 24, 514 N.E.2d 394 (1987). The focus of that inquiry is on the fairness of the trial, not the culpability of the prosecutor. *Bey* at 487.

{¶76} Our focus, upon review, is whether the prosecutor's actions deprived appellant of a fair trial such that there is a reasonable probability that, but for the prosecutor's misconduct, the result of the proceeding would have been different. *State v. Onunwor*, 8th Dist. No. 93937, 2010-Ohio-5587, ¶ 42, citing *State v. Loza*, 71 Ohio St.3d 61, 78-79, 641 N.E.2d 1082 (1994), *overruled on other grounds*.

{¶77} During its direct examination of Officer Troy Edge, the state adduced testimony that approximately one week after the Hard Rock Cafe robbery, Officer Edge recovered a "silver hand gun" from Chaney during his arrest in an unrelated case. The state attempted to introduce the firearm into evidence, as State Exhibit 65, and intended to establish that the gun recovered from the unrelated case was the same gun used during the commission of the Hard Rock Cafe robbery. At the time of Officer Edge's testimony, the firearm had not yet been located by the Cleveland police department.

{¶78} Subsequently, Hard Rock Cafe manager Tammi Minoski testified that one of the robbers held a "shiny silver gun" to her temple while she put money from the safe into a duffel bag. At the time of Minoski's testimony, the firearm had yet to be located by the Cleveland police department. Without the firearm present in court at the time of her testimony, the state was unable to authenticate the firearm as the weapon that was

pressed against her temple during the state's direct examination of her. As a result, the state withdrew the exhibit at the conclusion of its case-in-chief.

{¶79} Based on the circumstances presented at appellant's retrial, we find no basis to conclude that the state's discussion related to the retrieval of a firearm matching the description of the firearm used during the Hard Rock Cafe robbery was made without a good faith intent to introduce the firearm at the conclusion of its case-in-chief. Moreover, in light of Minoski's testimony that a firearm was used during the commission of the crime, we find no basis to conclude that appellant was prejudiced by the state's discussion of the weapon recovered during the arrest of Chaney in an unrelated case.

{¶80} Accordingly, appellant's eighth assignment of error is overruled.

## IX. Operability of Firearm

{¶81} In his ninth assignment of error, appellant argues that the trial court committed prejudicial error by allowing the state to introduce hearsay evidence relating to the operability of the firearm retrieved from Chaney.

{¶82} At retrial, the following discussion occurred between the state and Detective Dale Moran:

Q. Now, Officer — Detective, I've handed you what's been previously marked as State's Exhibit 65. What is State's Exhibit 65?

A. This is a silver handgun which happens to be a Lorein nine millimeter automatic. * * *.

Q. And there is some other items attached to the handgun; is that correct?

A. Yes.

Q. What is that?

A. That's a bag that we normally put the bullets and magazine in.

Q. Do you know for sure if there are magazines and bullets in there?

A. Definitely, yeah.

Q. And how do you know that?

A. I had this weapon test fired.

Q. You had this weapon test fired?

A. Yes, I did.

Q. Is it operable?

A. It is one hundred percent operable.

**{¶83}** Appellant argues that Det. Moran lacked personal knowledge to testify to the operability of the weapon because he was not the individual who personally tested the weapon. However, based on Det. Moran's testimony, we find no basis to support appellant's argument. As stated above, Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." We interpret Det. Moran's testimony as an indication that he was directly involved in the test fire of the firearm and, therefore, his testimony did not consist of hearsay statements.

**{¶84}** Appellant's ninth assignment of error is overruled.

## X. Motion in Limine

**{¶85}** In his tenth assignment of error, appellant argues that the trial court abused its discretion by denying his motion in limine to suppress his confession and refusing to redact references to other bad acts made in his confession.

**{¶86}** Evid.R. 404(B) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**{¶87}** Additionally, R.C. 2945.59 provides:

In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

**{¶88}** R.C. 2945.59 is to be strictly construed against the state, and to be conservatively applied by a trial court. *State v. DeMarco*, 31 Ohio St.3d 191, 194, 509 N.E.2d 1256 (1987). Thus, evidence of other acts may be admissible if the evidence is offered for a purpose other than to show the accused's propensity to act in conformity with the accused's character, e.g., to commit a certain type of crime. *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180 (1990), syllabus. For prior acts evidence to be admissible, the evidence must be relevant to proving the guilt of the offense in question.

*State v. Gardner*, 59 Ohio St.2d 14, 20, 391 N.E.2d 337 (1979). *See also State v. Henderson*, 76 Ohio App.3d 290, 294, 601 N.E.2d 596 (12th Dist.1991). There must be substantial evidence that the accused committed the act. *See State v. Carter*, 26 Ohio St.2d 79, 269 N.E.2d 115 (1971), at paragraph two of the syllabus. In addition, the prior act must not be too remote and must be closely related in time and nature to the offense charged. *State v. Burson*, 38 Ohio St.2d 157, 159, 311 N.E.2d 526 (1974). If the act is too distant in time or too removed in method or type, it has no permissible value. *Henderson* at 294.

{¶89} In this matter, we agree with the trial court's position that the statements made by appellant in his written confession were relevant for the purpose of demonstrating his identity. Appellant's confession included detailed information that linked him to his accomplice, Chaney. Appellant explained that he had previously assisted Chaney in the robbery of another downtown Cleveland restaurant by providing him with a detailed map of the premises and by informing him of how many employees would be working at the restaurant. The previous robbery, like that of the Hard Rock Cafe, was an inside job. Throughout the trial, appellant argued that he was not involved in the Hard Rock Cafe robbery, thereby placing his identity at issue.

{¶90} The information contained in appellant's statement was not used to establish his propensity to commit crimes, rather, it was used to establish his identity and presence at the Hard Rock Cafe by highlighting his criminal relationship and history with Chaney.

Based on appellant's history of committing inside robberies with Chaney, the state established a logical connection between the two crimes in order to identity appellant as a participant in the Hard Rock Cafe robbery. *See State v. Murphy*, 4th Dist. No. 09CA3311, 2010-Ohio-5031; *State v. Broom*, 8th Dist. No. 51237, 1987 WL 14401 (July 23, 1987). Therefore, the challenged portions of appellant's written confession were properly admitted.

{¶91} Appellant's tenth assignment of error is overruled.

XI. Manifest Weight

{¶92} In his eleventh assignment of error, appellant argues that his convictions are against the manifest weight of the evidence. When reviewing the weight of the evidence, we must review the record, weigh the evidence, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541.

{¶93} A weight-of-the-evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. *Id*. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. *Id*. Therefore, this court's "discretionary power to grant a new trial should be exercised only in the exceptional case

in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶94} In this matter, numerous witnesses testified at trial that two men entered the Hard Rock Cafe on May 21, 2000, and robbed the restaurant with the use of a firearm. At trial, manager Tammi Minoski testified that she was informed that the two men were at the Hard Rock Cafe in order to be interviewed for positions with the restaurant. Minoski testified that she went upstairs to look for the potential employees. When she did not find anyone, she returned to her office and resumed her work. She then heard a knock at her door. When she opened the door, one of the men brandished a firearm, held it to her temple, and ordered her to open the safe. Minoski testified that while she was emptying the safe, a second robber entered her office and stated, "don't worry, nobody's going to get hurt, we just want the money." Minoski testified that once she emptied the safe, the second robber taped her hands and feet and left her in her office. On redirect examination, Minoski identified appellant's voice as the voice of the second robber.

{¶95} Additionally, co-manager Lexi Halitsky testified that on May 21, 2000, she was informed by an employee that two men were at the Hard Rock Cafe for job interviews. Halitsky testified that she met with the two men briefly and advised them that she would notify Minoski that they wished to apply for positions at the restaurant. Halitsky testified that, upon notifying Minoski that the two men wished to be interviewed, she went on with her day until she heard Minoski scream her name from her

office. Halitsky testified that she ran to Minoski's office, and Minoski told her that they were being robbed. Halitsky testified that once she entered the office, she was ordered to the ground, where one of the men tied her hands and feet together with duct tape.

{¶96} Finally, Halitsky testified that she was able to get a good look at each of the men involved in the robbery and unequivocally identified appellant as the second robber:

> Q. There was questioning over the description of robber number two * * *.
> Is there any question in your mind who robber number two is?
>
> A. No.
>
> Q. Who is robber number two?
>
> A. The defendant.
>
> Q. This defendant. Pointing right here (indicating)?
>
> A. Yes.

{¶97} Furthermore, appellant corroborated the statements made by the state's witnesses by making a full confession in a detailed written statement at the time of his arrest. In his written confession, appellant stated:

> [Chaney] was talking to the manager and I heard her scream and then he called me into the office. He said bag the money because he was going to get the other girl. Me and the manager was bagging the money. I told the girl please do what he says, I'm new to this but he will hurt you. He aint playing. [Chaney] came in with the other girl. [Chaney] put her on the ground at gunpoint and started taping her mouth with duct tape.

{¶98} In light of the evidence presented at trial, including the in-court identification of appellant and appellant's voluntary written confession, we are unable to

conclude that the court clearly lost is way and created a manifest miscarriage of justice by convicting appellant of aggravated robbery and kidnapping.

{¶99} Appellant's eleventh assignment of error is overruled.

XII.  Sufficiency of the Evidence

{¶100} In his twelfth assignment of error, appellant argues that the state failed to present sufficient evidence to support his conviction for the firearm specifications.

{¶101} To prove a firearm specification, the state must show beyond a reasonable doubt that a firearm was operable at the time of the offense.  *State v. Murphy*, 49 Ohio St.3d 206, 551 N.E.2d 932 (1990), syllabus.  "[S]uch proof can be established beyond a reasonable doubt by the testimony of lay witnesses who were in a position to observe the instrument and the circumstances surrounding the crime."  *Id*.  The state may use circumstantial evidence to establish that the defendant possessed an operable firearm. *See Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541, paragraph one of the syllabus.  "A victim's belief that the weapon is a gun, together with the defendant's intent to create and use the victim's belief for the defendant's own criminal purposes, is sufficient to prove a firearm specification."  *State v. Dickess*, 174 Ohio App.3d 658, 2008-Ohio-39, 884 N.E.2d 92, ¶ 53 (4th Dist.).

{¶102} In *State v. Johnson*, 8th Dist. No. 90449, 2008-Ohio-4451, ¶ 22, we stated:

"[A] firearm penalty-enhancement specification can be proven beyond a reasonable doubt by circumstantial evidence. * * * [T]he trier of fact may consider * * * any implicit threat made by the individual in control of the firearm."  Thus where an individual brandishes a gun and implicitly but not

expressly threatens to discharge the firearm at the time of the offense, the threat can be sufficient to satisfy the state's burden of proving that the firearm was operable or capable of being readily rendered operable. "*Thompkins* clarifies that actions alone, without verbal threats, may be sufficient circumstances to establish operability of a firearm." (Internal citations omitted.)

{¶103} In this matter, Minoski testified that appellant's accomplice held a "silverish" gun to her temple and demanded that she empty the restaurant's safe. Clearly, a reasonable juror could construe the action of placing a firearm to Minoski's head as an implicit threat to discharge the firearm if the demands were not met. Accordingly, we find that the testimony constituted sufficient proof of the firearm's operability.

{¶104} Appellant's twelfth assignment of error is overruled.

XIII. Allied Offenses

{¶105} In his thirteenth assignment of error, appellant argues that his conviction for aggravated robbery and kidnapping are allied offenses.

{¶106} In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the Ohio Supreme Court established the proper analysis for determining whether offenses qualify as allied offenses subject to merger pursuant to R.C. 2941.25.

In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense and commit the other with the same conduct, not whether it is possible to commit one without committing the other. * * * If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.

"If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'" *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶50 (Lanzinger, J., dissenting).

If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

Conversely, if the court determines that the commission of one offense will never result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R .C. 2941.25(B), the offenses will not merge. *Id*. at ¶ 48-51.

{¶107} In the case at bar, appellant's convictions for aggravated robbery and kidnapping were not based on the same conduct or identical evidence, as appellant argues. Rather, the two crimes were committed separately. Unlike situations where the kidnapping of a victim is incidental to the commission of an aggravated robbery, the facts supporting appellant's kidnapping conviction were committed subsequent to the actual commission of the aggravated robbery.

{¶108} The testimony adduced at trial indicates that, after completing the aggravated robbery, the defendants bound the hands and feet of Minoski and Halitsky, left them in an enclosed office, and fled the restaurant unnoticed by other employees. Once the aggravated robbery of the Hard Rock Cafe was completed, "the act of restraining the victims was no longer incidental to the aggravated robbery, but was to facilitate appellant's escape and lack of detection." *State v. Pittman*, 5th Dist. No.

10CAA110087, 2011-Ohio-4085, ¶ 50. Accordingly, appellant's convictions did not merge.

**{¶109}** Appellant's thirteenth assignment of error is overruled.

### XIV. Consecutive Sentences

**{¶110}** In his fourteenth assignment of error, appellant argues that the trial court committed prejudicial error by failing to make findings of fact when it imposed consecutive sentences.

**{¶111}** We summarily reject this argument on the authority of *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, 941 N.E.2d 768, in which the Ohio Supreme Court held that "[t]rial court judges are not obligated to engage in judicial fact-finding prior to imposing consecutive sentences * * *." *Id*. at paragraph three of the syllabus.[4]

**{¶112}** Appellant's fourteenth assignment of error is overruled.

KENNETH A. ROCCO, J.:

### XV. Maximum Sentences

**{¶113}** Appellant's fifteenth assignment of error states: "The trial court abused its discretion by imposing maximum, consecutive sentences on all three counts."

---

[4] We note that the General Assembly has recently amended former R.C. 2929.14(E)(4), renumbered R.C. 2929.14(C)(4), and enacted new language requiring fact-finding for consecutive sentences. Am.Sub.H.B. No. 86. This legislation, which had an effective date of September 30, 2011, was not applicable to Moore, who was sentenced prior to September 30, 2011.

{¶114}   Moore challenges his sentence.  Upon a review of the record, a majority of this panel finds that his challenge has merit and that Moore's sentence in this case constitutes an abuse of the trial court's discretion.  Although it is extremely unusual for an appellate court to find that a trial court abused its discretion in sentencing, it has, however, been done.  *See, e.g., State v. Parker*, 193 Ohio App.3d 506, 2011-Ohio-1418, 952 N.E.2d 1159 (2d Dist.).  The facts of this case furnish an appropriate occasion for this court to make such a finding.

{¶115} The United States Supreme Court has noted that courts must avoid both the reality and "perception that no clear standards are being applied and that the rule of law is imperiled by sentences imposed for no discernible reason other than the subjective reactions of the sentencing judge."  *Harmelin v. Michigan*, 501 U.S. 957, 1007, 111 S.Ct. 2680, 115 L.E.2d 836 (1991) (Kennedy, J., concurring).  A trial court's incantation of "magic words" during a sentencing hearing, therefore, does not preclude appellate review of the propriety of the sentence imposed upon a defendant.  *State v. Nichols*, 2d Dist. No. 2010 CA 60, 2011-Ohio-4671, ¶ 39.

{¶116} In this case, invoking the "magic words," the trial court decided to impose a term of 33 years on Moore.  Moore thus received a sentence similar to one the court may impose on a defendant who committed aggravated murder.  *See* R.C. 2929.03(A)(1)(d).

{¶117} At Moore's sentencing hearing, the prosecutor argued that a 33-year sentence was justified because of the trauma Moore and his co-defendant inflicted on the victims. The judge agreed. If this sentence was "justified" for Moore, however, it begs the question of why Moore's co-defendant[5] Lamar Chaney received much more lenient treatment than he. In fact, Lamar Chaney, the co-defendant who actually used the gun during the incident, was sentenced to only 9 years in prison.[6]

{¶118} Indeed, Chaney brought the gun to the restaurant, produced it, put it to the head of one of the victims in order to terrorize her into giving up the restaurant's money, and sought out the location of the other victim, whereupon he also brought her to the office at gunpoint so that both victims could be bound and gagged. Moore acted as Chaney's accomplice.

{¶119} Under these circumstances, Ohio public policy, as reflected in the criminal statutes, required that Chaney should have received a mandatory and a longer sentence in this case than Moore. Chaney was the person who subjected the victims to the most "trauma," but Moore received a sentence three-and-a-half times that of the gunman.

{¶120} The only obvious difference in the disposition of this case against Chaney is that, unlike Moore, the docket reflects that Chaney chose not to exercise his right to a

---

[5] The trial court's docket of this case number reveals that Moore's three co-defendants, Lamar Chaney, Fred King, and Gary Waller, were charged similarly for their parts in the same incident.

jury trial. Indeed, the docket of this case shows that the state actually *dismissed* the firearm specifications against Chaney, along with six counts of the indictment, in exchange for his guilty pleas to one count of aggravated robbery and two counts of kidnapping. Moore, however, chose to take the case to the jury.

{¶121} Unlike the compliant Chaney, Moore was a difficult defendant who sorely tried the court's patience at every turn of the proceeding. It is difficult to come to any other conclusion in light of the history of this case and the comments the trial court directed toward Moore during the entire proceedings, but that the trial court decided to punish him for exercising his constitutional right to trial. *State v. Ambriez*, 6th Dist. No. L-03-1051, 2004-Ohio-5230.

{¶122} The trial court justified its disparate treatment of Moore by referring to his lengthy criminal record. While the appellate record does not contain the specifics of Moore's criminal record as compared to that of Chaney, in light of the authority Chaney displayed during the incident, it is unlikely that this was Chaney's first offense. Yet the same trial judge who determined Chaney should receive only nine years for his role in the incident decided Moore deserved a sentence more than three times as long.

{¶123} The record reflects the trial court did not order any updated presentence report in this case. If the distinguishing factor in choosing a 33-year sentence for Moore

---

[6] According to the trial court's docket of this case, a jury found one co-defendant not guilty, and the other co-defendant entered a plea to one count of attempted aggravated robbery and received a two-year sentence.

was his criminal record, then this may have been within the trial court's grasp in the year 2006 (the last year Moore appeared there for a resentencing hearing), but the appellate record is bereft of it.

{¶124} The record reflects Chaney was the mastermind behind this incident; he brought the gun and used it. However, the trial court never adequately explained the dichotomy between the sentence it imposed on Chaney and the sentence it imposed on Moore. Each time Moore came before the court for resentencing, the court never indicated any inclination toward deviating from the 33-year prison term. By the time Moore's case returned to the trial court from federal court, Moore already had served more than 11 years of his original sentence, and the gunman had completed his sentence.

{¶125} Without a proportionality analysis from the trial court, it is difficult to review the record in this case without wondering whether the sins of the principal actor were visited on Moore simply because he was a difficult defendant who exercised his right to a jury trial. Had the trial court ordered the probation department to prepare a new presentence report on Moore before pronouncing sentence, the issue would be easier to decide.

{¶126} The Ohio legislature has made it a matter of public policy to punish offenders who use guns in committing their crimes more severely than those who do not. In this particular case, while Moore acted with complicity, he did not actually wield the

weapon involved. His sentence, however, was 24 years more, more than 3 times as long as, the one the gunman received.

{¶127} As the court commented in *Nichols*, 2d Dist. No. 2010 CA 60, 2011-Ohio-4671, at ¶ 38, the trial court's treatment of Moore "as being the most depraved offender" is supported by neither the App.R. 9(B) record nor the legislative scheme and "depreciates the lawfulness and validity of such a finding in those cases that truly do merit such conclusions."

{¶128} Based upon the foregoing analysis, Moore's fifteenth assignment of error is sustained.

Conclusion

{¶129} Pursuant to the disposition of appellant's first through fourteenth assignments of error, his convictions are affirmed. Pursuant to the disposition of appellant's fifteenth assignment of error, his sentence is reversed, and this case is remanded or a resentencing hearing.

{¶130} The trial court is instructed to order the probation department to prepare a current presentence report prior to conducting the resentencing hearing. The trial court will then be in a better position to impose on appellant an appropriate sentence for his part in the incident that led to his convictions in this case.

{¶131} Convictions affirmed; cause reversed in part and remanded to the trial court for resentencing consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for resentencing.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

FRANK D. CELEBREZZE, JR., JUDGE
FOR THE MAJORITY — ASSIGNMENTS OF ERROR 1-14;
DISSENTS, WITH OPINION, ON ASSIGNMENT OF ERROR 15.

_____

KENNETH A. ROCCO, J.
FOR THE MAJORITY — ASSIGNMENT OF ERROR 15;
CONCURS ON ASSIGNMENTS OF ERROR 1-14.

MELODY J. STEWART, P.J., CONCURS WITH BOTH MAJORITY OPINIONS.

FRANK D. CELEBREZZE, JR., J., DISSENTING ON ASSIGNMENT OF ERROR 15:

{¶132} I respectfully dissent from the majority's conclusion that the trial court abused its discretion by imposing maximum, consecutive sentences on each of appellant's convictions.

{¶133} Appellate courts must apply a two-step approach when reviewing a defendant's sentence. *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶4.

First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision shall be reviewed under an abuse-of-discretion standard. *Id.*

{¶134} In *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, the Ohio Supreme Court held that trial courts "have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *Id.* at ¶ 100.

{¶135} In *Kalish*, the Ohio Supreme Court explained that, "[a]lthough *Foster* eliminated mandatory judicial fact-finding for upward departures from the minimum, it left intact R.C. 2929.11 and 2929.12." *Id.* at ¶ 13. Thus, the trial court must still consider R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender.

{¶136} R.C. 2929.11 and 2929.12 "are not fact-finding statutes." *Kalish* at ¶ 17.

Instead, they serve as an overarching guide for trial judges to consider in fashioning an appropriate sentence. In considering these statutes in light of *Foster*, the trial court has full discretion to determine whether the sentence satisfies the overriding purpose of Ohio's sentencing structure. Moreover, R.C. 2929.12 explicitly permits a trial court to exercise its discretion in considering whether its sentence complies with the purposes of sentencing. *Id.*

"Therefore, assuming the trial court has complied with the applicable rules and statutes, the exercise of its discretion in selecting a sentence within the permissible statutory range is subject to review for abuse of discretion pursuant to *Foster*." *Id.*

{¶137} Finding error in appellant's sentence, the majority opines that the trial court merely recited the "magic words" to justify appellant's otherwise inappropriate sentence. While I agree that a trial court's incantation of magic words during a sentencing hearing does not preclude appellate review of the propriety of the sentence imposed, I find that the trial court did not merely recite statutory language in this matter. Rather, the record reflects that the trial court carefully reviewed the sentencing factors outlined in R.C. 2929.11 and 2929.12 and only issued appellant's sentence after assessing his past and present criminal conduct in accordance with those factors.

{¶138} The trial court stated in its judgment entry that appellant's prison term is consistent with the principles and purposes of sentencing set forth in R.C. 2929.11 and that it had considered all required factors of the law. Moreover, the transcript of the sentencing hearing explicitly indicates that the trial court weighed the factors outlined in R.C. 2929.12. Specifically, the trial court considered the seriousness of appellant's convictions, his acts of violence against others while incarcerated, and the likelihood of his committing future violent crimes based on his repeated violent and threatening behavior throughout the trial. Most importantly, however, the trial court carefully considered appellant's extensive criminal history:

> Now, you had a life time of crime, Mr. Moore. You have been an incordial [sic] criminal. You have proven yourself, and the Court will take into consideration the last ten years, your behavior.

> You got a file thicker than my knuckles from the county, and the state, from the people you harmed, and you have been convicted of these.

> * * *

* * * and you've proven yourself to be a dangerous criminal.

I'm looking at everything in your life up through — in your life and I'm incorporating the arguments I made at the past sentence. I will incorporate all the points made in the past, and your record which I have gone over in great detail.

You have caused harm. You have worked with a weapon. You organized your crime. You have taken the risk in order to achieve these — to reap the rewards of these crimes with your cohorts, these 14, $15,000 type takings.

You have committed other aggravated robberies — other aggravated robberies in the same time period. The harm that you have caused to the victims is great. The harm you caused the community is great.[7]

In light of these factors, the trial court concluded that consecutive sentences were not disproportionate to the seriousness of appellant's conduct. The trial court elaborated:

Your conduct is outrageous and the danger you pose is tremendous to the public * * *. Any sentence short of the maximum on each would be insufficient to give you the punishment you deserve, you have earned. You have demonstrated that you need it. The seriousness of each of these factors has been considered now outweighs any remote possibility that you would refrain from future crime. You're a dangerous walking time bomb as you showed yesterday again with your violent behavior, and as you have shown throughout the trial[8] and throughout your entire history in this court;

---

[7] In addition to referencing appellant's past crimes, the trial court also discussed the crimes he had been convicted of subsequent to the Hard Rock Cafe robbery, including felonious assault on a corrections officer with a razor (CR-401325); drug possession (CR-398020); assault on a corrections officer (CR-400978); aggravated robbery and kidnapping (CR-394297); and assault on a corrections officer (CR-400093). The trial court ordered appellant's five year sentence in CR-401325 to run consecutively to the 33-year sentence imposed in the present case. Appellant's remaining convictions were ordered to run concurrently to each other and with CR-401325.

[8] The record reflects that during pretrial hearings, appellant engaged in an argument with his attorney. During the altercation appellant stated, "With my hands bitch. With my hands I'm going to fire you." Upon removing appellant from the courtroom, the trial court stated on the record that "the defendant has threatened Mr. Sims's life. I guess he's going to choke him, kill him." Subsequently, and despite warnings from the court to refrain from improper

as well as your history in the penitentiary. In order to protect the community and to give you the sentence you deserve, and nothing short of it, is maximum consecutive sentence.

{¶139} Given appellant's documented criminal history and the details of the crime at hand, I can find no error in the trial court's conclusions.

{¶140} Despite the trial court's colloquy, the majority's opinion relies heavily on the fact that appellant's co-defendant, Lamar Chaney, received a nine-year sentence after accepting a plea agreement. The majority concluded that "the impression is left that Moore was 'punished for exercising his right to a jury trial.'" On close review of the statements made by the trial court at sentencing, I find such a conclusion to be ludicrous. In support of its position, the majority cites *State v. Ambriez*, 6th Dist. No. L-03-1051, 2004-Ohio-5230. In *Ambriez*, the trial court found:

> As to * * * whether recidivism is more likely or less likely, *the Court finds that recidivism is more likely* because this was committed while you were under community control sanction in Michigan; you have a history of criminal convictions; you've obviously not responded to sanctions in the past; *there's no genuine remorse, because we had to proceed to trial;* and obviously with your statement there's no genuine remorse, *all of which makes recidivism more likely*, thus would tip the scales on the side of [sic] prison term. (Emphasis sic).

The sixth district concluded that the trial court's statement implied that defendant's sentence was partially predicated on the defendant's decision to exercise his right to a trial, rendering the sentence unconstitutional and contrary to law.

{¶141} Although *Ambriez* contains well articulated law, which I concur with, I find that its holding has no relevance to this case. At no point during appellant's

outbursts, appellant continued to threaten his attorney, stating, "And when I catch you on the street, I'm going to * * * And I promise you, I got your address. * * * I'm

sentencing hearing did the trial court state or imply that appellant's decision to exercise his right to trial had any bearing on his sentence. Rather, the trial court focused on appellant's involvement in the Hard Rock Cafe robbery and his extensive criminal history.

{¶142} Furthermore, the majority's discussion of co-defendant Chaney's sentence is wholly inappropriate. Although the majority's opinion acknowledges that Chaney chose not to exercise his right to a jury trial, it completely ignores the fact that the record is completely devoid of any details pertaining to Chaney's sentence or the plea agreement he made with the state. Importantly, the record does not contain information pertaining to Chaney's criminal record, the terms of his plea agreement, any possible sentencing recommendation made by the state, or even the charges he ultimately pled guilty too.

{¶143} While the majority contends that there are no distinguishing characteristics to justify the difference between the sentences received by appellant and co-defendant Chaney, this court cannot make that determination based on the record before us. Therefore, I believe that any attempt to compare appellant's sentence to the sentence received by co-defendant Chaney would be based on pure speculation and unfounded inferences. *See State v. Hall*, 179 Ohio App.3d 727, 2008-Ohio-6228, 903 N.E.2d 676, ¶ 11 (10th Dist.). Such an analysis should not support the reversal of appellant's sentence.

{¶144} In light of the trial court's extensive discussion relating to the factors it considered when imposing appellant's sentence, I find that the trial court more than adequately followed the statutory process for felony sentencing. The sentence imposed

coming. * * * I'm coming. * * * I'm coming to your house, bitch."

was within the statutory range for appellant's felony convictions. The sentencing guidelines in the state of Ohio have been carefully developed by the legislative branch, and I cannot find error with a sentence that falls within those statutory parameters and is supported by the record. Therefore, I would affirm appellant's sentence. *See State v. Dowell*, 8th Dist. No. 88864, 2007-Ohio-5534; *State v. Dawson*, 8th Dist. No. 86417, 2006-Ohio-1083.